908 P.2d 483

**STATE of Arizona, Appellee,**

v.

**Fleeta R. BALDWIN, Appellant.**

**No. 1 CA–CR 94–0464.**

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 24, 1995.

As Corrected Jan. 10, 1996.

Roderick G. McDougall, City Attorney by F. Tyler Rich, Assistant City Prosecutor, Phoenix, for Appellee.

Owen McGeehon and James P. Mueller, Phoenix, for Appellant.

## OPINION

FIDEL, Presiding Judge.

Fleeta M. Baldwin ("appellant") appeals her conviction for residential picketing, a class three misdemeanor, in violation of Ariz. Rev.Stat.Ann. ("A.R.S.") § 13–2909. We affirm. We hold that § 13–2909 is neither impermissibly vague nor overbroad; nor does it violate state or federal guarantees of free speech and religious freedom.

### I. FACTS AND PROCEDURAL HISTORY

On May 1, 1993, the Phoenix police arrested appellant near the home of Dr. Frederic Stimmell, an obstetrician/gynecologist whose practice includes abortions. Appellant had been walking back and forth in front of Dr. Stimmell's home, carrying a Bible and praying aloud. When Dr. Stimmell arrived, he encountered appellant standing in front of his home. As Dr. Stimmell pulled into his driveway, appellant moved in front of his car and showed Dr. Stimmell her Bible, then moved slowly from his path.

Dr. Stimmell entered the house to notify the police and to seek his camera. Appellant continued to walk back and forth in front of Dr. Stimmell's home. When Dr. Stimmell

returned outside, appellant told him he was "going to hell for killing babies."

Dr. Stimmell informed appellant that he had contacted the police. Appellant walked away and entered her car, which was parked nearby. Matthew Engelthaler, who had been waiting in the car, then traded places with appellant, walking back and forth in front of Dr. Stimmell's home, carrying rosary beads and praying until police arrived.

The police arrested appellant and Engelthaler for residential picketing under A.R.S. § 13–2909(A), which provides:

> A person commits residential picketing if, with intent to harass, annoy or alarm another person, such person intentionally engages in picketing or otherwise demonstrates before or about the residence or dwelling place of an individual, other than a residence or dwelling place also used as the principal place of business of such individual.

After a non-jury trial in Phoenix Municipal Court, Judge Michael Simonson found appellant guilty, sentenced her to five days in jail, and imposed a $210.00 fine and one year of probation, during which she could have no contact with Dr. Stimmell.

Appellant appealed to the superior court. Judge B. Michael Dann upheld the conviction. Judge Dann explained:

> Appellant's conduct revealed that she had the physician's house targeted. She was seen to walk back and forth and standing in front of the physician's house while holding a book, presumably a Bible. When the doctor attempted to pull into his driveway, appellant walked into the driveway and momentarily blocked it. When confronted by the doctor-resident, appellant lectured him concerning the prospects for his soul if he continued to perform abortions. Among other things, she told the doctor he was "going to hell for killing babies." When the doctor attempted to photograph appellant in front of his property, she turned and walked to and entered a parked car.

Viewing the evidence in the light most favorable to support the municipal court's decision, Judge Dann found "sufficient evidence to support the finding that appellant engaged in 'picketing or otherwise demonstrate[d] before or about the residence of an individual.'" Judge Dann rejected appellant's claims that the statute was impermissibly vague and overbroad and that it violated appellant's First Amendment rights. Appellant now appeals.

## II. DISCUSSION

Appellant challenges the constitutionality of § 13–2909 on four grounds: (1) the statute is impermissibly overbroad; (2) the statute is impermissibly vague; (3) the statute violates state and federal guarantees of freedom of speech; and (4) the statute violates state and federal guarantees of freedom of religion. We consider each argument in turn.

### A. Overbreadth

Appellant first argues that § 13–2909 is overbroad. "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but ... includes within its scope activities which are protected by the First Amendment." *State v. Jones*, 177 Ariz. 94, 99, 865 P.2d 138, 143 (App.1993) (quoting John E. Nowak et al., Constitutional Law ch. 18, § III, at 868 (2d ed. 1983)). Appellant contends that the residential picketing statute is overbroad because it encompasses picketing throughout a neighborhood, activity to which the statute may not constitutionally be applied.

The Supreme Court rejected a similar argument in *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). *Frisby* involved a residential picketing statute that prohibited "picketing before or about the residence or dwelling of any individual." *Id.* at 476, 108 S.Ct. at 2498. In assessing the scope of the ordinance, the *Frisby* court narrowly construed the statute as prohibiting only targeted picketing. *Id.* at 482, 108 S.Ct. at 2501. "[T]he [anti-picketing] ordinance is readily subject to a narrowing construction that avoids constitutional difficulties. Specifically, the use of the singular form of the words 'residence' and 'dwelling' suggests that the ordinance is intended to prohibit only picketing focused on,

and taking place in front of, a particular residence." *Id.*

■ This court has recognized that "courts should give statutes a constitutional construction whenever possible. Before declaring a statute unconstitutional, a court should consider whether a limiting construction would cure its constitutional infirmity." *State v. Takacs,* 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991) (citation omitted). Section 13–2909 is subject to the same narrowing construction as the statute in *Frisby.* Section 13–2909 employs the singular form of the words "residence" and "dwelling," thereby prohibiting only pickets and demonstrations targeted at an individual home. Additionally, the terms "picketing" and "demonstrates" are modified by the language "before and about the residence or dwelling place of an individual," which adequately narrows the statute's scope to picketing and demonstrations targeted at an individual home. As in *Frisby,* therefore, "we construe the ban to be a limited one; only focused picketing taking place solely in front of a particular residence is prohibited." *Frisby,* 487 U.S. at 483, 108 S.Ct. at 2502.

■ Appellant contends that her conviction cannot stand even under a narrow reading of § 13–2909 because the trial court erred in finding that she focused her conduct on Dr. Stimmell's home. Appellant claims that she was walking the full length of the street and was only coincidentally at or near Dr. Stimmell's home each time he saw her.

It is not our appellate function to reweigh the evidence. The trial court was not obliged to accept, and did not accept, appellant's characterization of her conduct. Whether or not appellant ranged at times beyond Dr. Stimmell's home, the evidence permitted the conclusion that she targeted his home. Such conduct lies within a reading of the statute sufficiently narrow to relieve concerns of overbreadth.

### B. *Vagueness*

■ Appellant argues that the terms "picketing" and "otherwise demonstrates" render § 13–2909 unconstitutionally vague. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *State v. Tocco,* 156 Ariz. 116, 118, 750 P.2d 874, 877 (1988). However, a statute need not be drafted with absolute precision. *Takacs,* 169 Ariz. at 395, 819 P.2d at 981. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300. A statute is not rendered unconstitutionally vague simply because a term is undefined, susceptible to more than one meaning, or could have been written with greater precision. *Takacs,* 169 Ariz. at 395, 819 P.2d at 981.

■ We reject appellant's first claim that, because § 13–2909 does not define the term "picketing," it is impermissibly vague. The dictionary defines the verb "picket" as "to walk or stand in front of as a picket," and defines the noun "picket" as "a person posted for a demonstration or protest." Webster's Ninth New Collegiate Dictionary 889 (1988); *accord Frisby,* 487 U.S. at 482, 108 S.Ct. at 2501 (defining picketing as "posting at a particular place"). In the context of a prohibition against targeted residential picketing, the term "picket" has a singular, commonly understood meaning and thus is not vague. *Accord State v. Castellano,* 506 N.W.2d 641, 649 (Ct.App.Minn.1993) (rejecting claim that statute forbidding targeted residential picketing was void for vagueness); *Simpson v. Municipal Court,* 14 Cal.App.3d 591, 600–01, 92 Cal.Rptr. 417 (1971) (upholding statute forbidding picketing within state capitol).

■ We also reject appellant's claim that the term "otherwise demonstrates" renders the statute void for vagueness. In relevant context, the dictionary defines "demonstration" as "a public exhibition of the attitude of a group of persons toward a controversial issue, or other matter, made by picketing, parading, etc." Random House Dictionary of the English Language 385 (1981); *see also* Black's Law Dictionary 432 (6th ed. 1990) (defining "demonstrator" as "[o]ne who stands, walks or parades in public in support of a cause to inform the public of the legitimacy of the cause and to enlist support for

such cause"); Webster's Ninth New Collegiate Dictionary 338 (defining "demonstrator" as "someone who engages in a public demonstration" and "demonstration," in relevant context, as "a public display of group feelings toward a person or cause.") Although the term "demonstrate" is broad, that fact alone does not render it vague. A term "which casts a wide net" may be necessary to achieve statutory objectives. *Stoianoff v. Montana,* 695 F.2d 1214, 1220 (9th Cir.1983) (upholding drug paraphernalia statute against claim of vagueness and overbreadth). Although one court has found the term "demonstration activity" unduly vague, *Sabelko v. City of Phoenix,* 846 F.Supp. 810 (D.Ariz. 1994), this court and others have rejected claims of impermissible vagueness of the terms "demonstrate" and "demonstration" in the context of the First Amendment. *See Culver v. Secretary of the Air Force,* 389 F.Supp. 331, 333 (D.D.C.1975) (upholding regulation prohibiting servicemen from "participating in demonstrations" in foreign countries), *aff'd* 559 F.2d 622 (D.C.Cir.1977); *Jackson v. Ellington,* 316 F.Supp. 1071, 1074 (W.D.Tenn.1970) (upholding statute that prohibited inducing school-age children from missing school to participate in a "public protest demonstration"); *cf. State v. Swanton,* 129 Ariz. 131, 132, 629 P.2d 98, 99 (App. 1981) (upholding statute prohibiting possession of certain weapons except when used in "lawful exhibitions, demonstrations, contests or athletic events"). We hold that the term "demonstrates" gives adequate notice of the conduct that the statute proscribes.

### C. Time, Place, and Manner Restrictions

█ We turn next to appellant's argument that § 13–2909 unconstitutionally limits her right of free speech.[1] Appellant correctly contends that the residential picketing statute implicates federal and state guarantees of free speech. Nonetheless, "[e]ven protected speech is not equally permissible in all

places and at all times." *Frisby,* 487 U.S. at 479, 108 S.Ct. at 2499 (quoting *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 799, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985)). The government may impose reasonable restrictions on the time, place, and manner of speech.

The extent to which the government may restrict the time, place, and manner of speech depends on the type of forum in which the speech occurs. *Id.* Here, the relevant forum is public. *Id.* at 480, 108 S.Ct. at 2500 (public streets and sidewalks remain public forums throughout residential neighborhoods). The Supreme Court set forth the appropriate test for time, place, and manner restrictions on speech in public forums in *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983):

> In ... public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Id.* at 45, 103 S.Ct. at 955 (citations omitted). We will address these criteria one by one.

█ First, § 13–2909 is content-neutral. Without regard to the message conveyed, it prohibits picketing and demonstrations directed at a particular residence and conducted with the intent to harass, annoy, or alarm.

Second, subject to our narrow interpretation, § 13–2909 leaves open ample alternate channels of communication. The statute does not prohibit walking throughout a neighborhood, distributing literature, or

---

1. The First Amendment provides:
   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.
The Arizona Constitution provides:
   Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.
Ariz. Const. art. II, § 6.

proselytizing door to door; it merely prohibits residentially-targeted picketing and demonstrations that are done "with intent to harass, annoy or alarm another person." *See Frisby,* 487 U.S. at 484, 108 S.Ct. at 2502; *see, e.g., Castellano,* 506 N.W.2d at 647 (narrowly construing anti-picketing statute in accordance with *Frisby* and noting that "[s]o narrowed, the ordinance would not prohibit constitutional distribution of materials to neighborhood residents, or solicitation by mail or in person").

Third, the statute serves a significant government interest—that of protecting residential privacy. "[I]ndividuals are not required to welcome unwanted speech into their own homes and ... the government may protect this freedom." *Frisby,* 487 U.S. at 485, 108 S.Ct. at 2502.

Appellant argues, however, that § 13–2909 is not narrowly tailored to the government's interest in protecting residential privacy because, by leaving the terms "picket" and "demonstrate" undefined, the statute potentially encompasses quiet, non-penetrating residential demonstrations. Appellant's argument presumes that a quiet and non-penetrating residential demonstration does not invoke legitimate privacy concerns. We disagree.

■ Focused demonstrations, regardless of size or manner of expression, can invade the privacy of the homeowner. *Frisby* at 487, 108 S.Ct. at 2504 ("[T]he actual size of the group is irrelevant; even a solitary picket can invade residential privacy."). The intent and targeted nature of the demonstration, rather than the number of demonstrators or the manner in which they convey the message, invokes the government's interest in protecting residential privacy.

> [T]he picketing is narrowly directed at the household, not the public. The type of picketers banned by the ... ordinance generally do not seek to disseminate a message to the general public, but to intrude upon the targeted resident, and to do so in an especially offensive way. Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy.

> The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt....

*Frisby,* 487 U.S. at 486, 108 S.Ct. at 2503.

Appellant tries to distinguish *Frisby* and other residential privacy cases on the ground that those cases concerned threats to privacy within the home. Asserting that her conduct did not "invade" the interior of Dr. Stimmell's home, appellant argues that the government's claimed interest in protecting residential privacy does not apply. In support of this position, appellant cites various cases in which the Supreme Court has upheld the validity of statutes prohibiting expressive activity that disturbed residential tranquility. *See Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (upholding anti-noise ordinance); *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978) (upholding regulation of offensive radio broadcast); *Rowan v. United States Post Office Dep't,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (upholding federal regulation that required senders of offensive material to remove an individual's name from mailing list on request); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding ordinance that prohibited sound amplification in residential neighborhoods).

The primary concern of these cases, however, is not, as appellant asserts, whether the conduct penetrates the home. Rather, these cases focus on the captivity of the listener. "One important aspect of residential privacy is protection of the unwilling listener." *Frisby,* 487 U.S. at 484, 108 S.Ct. at 2502. Thus, the Supreme Court has validated limitations on expressive activity only where the listener was unable to avoid the unwanted speech. *See Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 541–42, 100 S.Ct. 2326, 2335, 65 L.Ed.2d 319 (1980) (explaining that "the First Amendment does not permit the government to prohibit speech as intrusive unless the 'captive' audience cannot avoid objectionable speech"); *Martin v. Struthers,* 319 U.S. 141, 148–49, 63 S.Ct. 862, 866, 87 L.Ed. 1313 (1943) (striking down a ban on door-to-door solicitation on the

grounds that the resident could prevent such intrusions).

Further, we reject appellant's contention that, as a factual matter, her conduct was unobtrusive. As discussed above, the captive nature of the listener makes the speech inherently intrusive. *See Frisby,* 487 U.S. at 487, 108 S.Ct. at 2504 ("The resident is figuratively, and perhaps literally, trapped within the home, and because of the unique and subtle impact of such picketing is left with no ready means of avoiding the unwanted speech.").

Finally, appellant argues that, even if the First Amendment does not insulate her conduct from criminal prosecution, Article II, § 6 of the Arizona Constitution does so. Our supreme court has indeed given broader scope to Article II, § 6 than to the First Amendment. *See Mountain States Tel. & Tel. Co. v. Arizona Corp. Comm'n,* 160 Ariz. 350, 354–55, 773 P.2d 455, 459–60 (1989). This does not mean, however, that speech has such primacy under the Arizona Constitution as to subordinate any countervailing interest in privacy. The Arizona Constitution, unlike the United States Constitution, gives explicit protection to privacy. Article II, § 8 provides that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article II, § 8 not only establishes a constraint on intrusive governmental action, *see Cluff v. Farmers Ins. Exch.,* 10 Ariz.App. 560, 563, 460 P.2d 666, 669 (1969); it also declares an element of personal freedom and autonomy that the state may legislate to protect. *Cf. Frisby,* 487 U.S. at 484–85, 108 S.Ct. at 2502–03 (the state may legislate to protect "the privacy all citizens enjoy within their own walls"). In a clash between one citizen's speech and another's privacy, neither holds an automatic trump card. The Arizona legislature, in A.R.S. § 13–2909, has attempted to accommodate the right of free speech and the right of privacy in a manner we find valid under both the state and federal constitutions.

### D. Religious Freedom

We also reject appellant's argument that, on its face, § 13–2909 infringes upon religious freedom guaranteed by the First Amendment and by the Arizona Constitution.[2] Contrary to appellant's claim, the statute is neutral with regard to the content of the expression it affects; it does not single out religious "picketing" or "demonstrations" for prohibition. To the extent that appellant argues that the statute prohibits public prayer, she advances a claim that the statute is unconstitutional as applied, an issue we may not reach. *See State v. Crisp,* 175 Ariz. 281, 282, 855 P.2d 795, 796 (App.1993) ("Our jurisdiction does not extend to examining the application of the statute to an individual defendant. Therefore, if we find the statute [facially] constitutional, our inquiry is at an end.").

### III. CONCLUSION

For the forgoing reasons, we affirm the judgment of the trial court.

GARBARINO and WEISBERG, JJ., concur.

**2.** The Arizona Constitution provides:
   Perfect toleration of religious sentiment shall be secured to every inhabitant of this State, and no inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship, or lack of the same.
   Ariz. Const. art. XX.