932 P.2d 266

STATE of Arizona, Appellee,

v.

Gerald J. McLAMB, Appellant.

No. 1 CA–CR 95–0329.

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 17, 1996.

Review Denied Feb. 26, 1997.

Roderick G. McDougall, City Attorney by F. Tyler Rich, Assistant City Prosecutor, Phoenix, for Appellee.

Snell & Wilmer by Steve C. Thornton, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

Gerald J. "Jack" McLamb ("defendant") appeals from a judgment of the Maricopa County Superior Court affirming his conviction in the City of Phoenix Municipal Court for a violation of Phoenix City Code ("Code") section 23–21 proscribing the unauthorized wearing of the official insignia of the Phoenix Police Department. We have jurisdiction to determine the facial validity of this ordinance. Ariz.Rev.Stat. Ann. ("A.R.S.") § 22–

375. Because we find that the ordinance is valid, the judgment of the superior court is affirmed.

## FACTS AND PROCEDURAL HISTORY

The facts essential to the resolution of this appeal are not disputed. The defendant was a City of Phoenix Police Officer from 1976 through 1986 when he retired. At that time, he was given a Phoenix Police Department retired officer's badge. The defendant also had what he called his "retirement uniform" which, in part, consisted of an official Phoenix Police Department shirt on which were shoulder patches with the official department insignia.

The defendant had long been involved in a number of political activities. For example, he was the publisher of a newsletter named *Aid and Abet* which was directed to law enforcement officers with the expressed purpose of "educating them concerning constitutional issues." In 1993, he helped form an organization called "Police Against the New World Order." This organization produced a manual, to which he contributed, called *Operation Vampire Killer 2000.*

On December 12, 1993, the defendant operated a booth at a gun show at the Arizona Veterans Memorial Coliseum in Phoenix. Over the booth hung banners declaring "Police Against the New World Order," "Police Support Your Right to Bear Arms" and "We Will Not Take Your Guns Away." The defendant distributed his *Aid and Abet* newsletter and advertised the *Operation Vampire Killer 2000* manual. He wore his "retirement uniform" with the official Phoenix Police Department insignia shoulder patches, as well as his police department retired officer's badge and a whistle used by department motor officers. Visible in the defendant's booth was a police helmet. The defendant admitted that he wore the uniform to give weight and credibility to his political views. However, he maintained that he never represented himself to be an active police officer or a spokesman for the Phoenix Police Department.

The Phoenix Police Department received a complaint about the defendant's conduct in handing out political literature in a police officer's uniform. In response, Officers David Lundberg and Ted Music went to the gun show and saw the defendant in his attire. They advised the defendant that he could not wear the Phoenix Police Officer's badge nor the official Phoenix Police Department insignia shoulder patches because his unauthorized use of the badge and insignia violated the Phoenix City Code. The defendant refused to remove his shirt or, alternatively, to remove the patches, claiming that he had a First Amendment right to wear his "retirement uniform." He then was issued two citations, one for impersonating a police officer in violation of Code section 23–20 and one for wearing an official badge or insignia without authorization in violation of Code section 23–21.

The Phoenix Municipal Court dismissed the Code section 23–20 charge on the basis that it was preempted by state legislation. The court also found that the defendant had not violated section 23–21 by wearing his retired officer's badge because the badge was not an official one. However, it found that the defendant had violated section 23–21 by wearing the shoulder patches with the official Phoenix Police Department insignia.

Following an evidentiary hearing on the defendant's claim of selective and discriminatory enforcement, the municipal court found that there was no such exclusive enforcement and that the defendant was guilty of violating Code section 23–21. It fined him $79.

The defendant appealed the conviction and sentence to the superior court, which affirmed the municipal court's judgment.

The defendant timely appealed to this court. He presents the following issues:

1. Whether his prosecution was impermissibly selective and discriminatory;

2. Whether Code section 23–21 is preempted by A.R.S. section 13–2406;

3. Whether Code section 23–21 is unconstitutionally vague;

4. Whether Code section 23–21 is unconstitutional because it violates the First Amendment to the United States Constitution;

5. Whether Code section 23–21 is unconstitutionally overbroad.

## DISCUSSION

### A. Selective and Discriminatory Prosecution

█ Our review is limited to the facial validity of Code section 23–21 because this action was instituted in municipal court and appealed to superior court. A.R.S. § 22–375; *State v. Phillips,* 178 Ariz. 368, 370, 873 P.2d 706, 708 (App.1994). If the ordinance is facially constitutional, we have no jurisdiction to examine its application to the individual defendant. *Id.* Since the issue of selective and discriminatory enforcement involves only the implementation of the ordinance, we will not consider this issue.

### B. Preemption

The City of Phoenix, as authorized by the Arizona Constitution, Article 13, Section 2, has adopted a charter permitting it to enact municipal ordinances. As a charter city, Phoenix may exercise "all the powers authorized by its charter, providing those powers are not inconsistent with the Arizona Constitution or the general laws of this state." *State v. Jacobson,* 121 Ariz. 65, 68, 588 P.2d 358, 361 (App.1978); *see* A.R.S. § 9–284.

The defendant argues that Code section 23–21 is preempted by A.R.S. section 13–2406, thus invalidating the ordinance. We disagree.

The rule regarding preemption states:

[B]oth a city and state may legislate on the same subject when that subject is of local concern or when, though the subject is not of local concern, the charter or particular state legislation confers on the city express power to legislate thereon; but where the subject is of statewide concern, and the legislature has appropriated the field by enacting a statute pertaining thereto, that statute governs throughout the state, and local ordinances contrary thereto are invalid.

*Phoenix Respirator & Ambulance Service, Inc. v. McWilliams,* 12 Ariz.App. 186, 188, 468 P.2d 951, 953 (1970) (citations omitted).

Section 13–2406(A) of the Arizona statutes provides:

A person commits [the crime of] impersonating a public servant if such person pretends to be a public servant and engages in any conduct with the intent to induce another to submit to his pretended official authority or to rely upon his pretended official acts.

Section 23–21 of the Code provides:

It shall be unlawful for any person to wear a fireman's or policeman's badge or insignia, or the badge or insignia of any public officer or inspector of the City when not properly authorized to wear such badge or insignia.

The ordinance bars the unauthorized use of a public officer's insignia on clothing. In contrast, the statute, with no mention of an insignia, prohibits the impersonation of a public servant engaging in "conduct with the intent to induce another to submit" to his faked authority. There is no conflict between Code Section 23–21 and A.R.S. section 13–2406(A).

█ The question remains whether the statute "has so completely occupied the field that it becomes the sole and exclusive law on the subject, leaving no room for any supplementary or additional local regulation." *Jacobson,* 121 Ariz. at 69, 588 P.2d at 362; *see Prendergast v. City of Tempe,* 143 Ariz. 14, 691 P.2d 726 (App.1984). Simply because the state and local legislation "touch upon a common element" does not mean that the ordinance is preempted. *Jacobson,* 121 Ariz. at 70, 588 P.2d at 363. An ordinance will not be found invalid if a reasonable interpretation of it avoids conflict with a statute. *State v. Crisp,* 175 Ariz. 281, 284, 855 P.2d 795, 798 (App.1993). In the case of these two laws, there is no suggestion that the legislature intended to preempt the regulation of municipal insignias. *Id.* In passing its statute, the state's manifest purpose was to protect its populace from persons having the intent to persuade or cause innocent individuals to submit to simulated authority or to rely upon pretended "official" acts. The City of Phoenix, with a different purpose altogether, sought to regulate the use of indicia of its governmental authority.

*C. Vagueness*

█ The defendant argues that Code section 23–21 is unconstitutionally vague. He claims that it failed to give him adequate notice of how and when the ordinance would be enforced and under what circumstances the wearing of Phoenix Police Department insignia would be authorized.

█ When a law is challenged on the basis of vagueness or overbreadth, the appellate court has the duty of construing a law in such a manner that it will be constitutional. *State v. Tocco,* 156 Ariz. 116, 119–20, 750 P.2d 874, 877–78 (1988); *State v. Lycett,* 133 Ariz. 185, 190, 650 P.2d 487, 492 (App.1982). In this regard, the defendant has the burden of establishing the ordinance's invalidity beyond a reasonable doubt. *Id.; State v. Steiger,* 162 Ariz. 138, 145, 781 P.2d 616, 623 (App.1989).

█ "A legislative enactment is unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit standards for those who will apply it." *State v. Takacs,* 169 Ariz. 392, 394, 819 P.2d 978, 980 (App.1991); *see State v. Tober,* 173 Ariz. 211, 214, 841 P.2d 206, 209 (1992); *Bird v. State,* 184 Ariz. 198, 203, 908 P.2d 12, 17 (App.1995).

> The Constitution only requires that language convey a sufficiently definite warning as to proscribed conduct when measured by common understanding and practices. That there will be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. [Citation omitted.]

*State v. Cota,* 99 Ariz. 233, 236, 408 P.2d 23, 26 (1965). *See United States v. Nat'l Dairy Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1963). If a statute gives notice of prohibited conduct, it is not void for vagueness "simply because it may be difficult to determine how far one can go before the statute is violated." *Phillips,* 178 Ariz. at 370, 873 P.2d at 708 (quoting *Berenter v. Gallinger,* 173 Ariz. 75, 81, 839 P.2d 1120, 1126 (App.1992)).

The word "insignia" as used in Code section 23–21 has a well-established, common meaning which a person of ordinary intelligence would understand,[1] and the defendant does not challenge this word. Rather, he claims that the word "authorized" as used in the same code section is vague because the ordinance does not specify when a person is permitted to wear the insignia.

The *Oxford English Dictionary* (1971) defines the word "authorize" as "to give legal force to; to make legally valid; to give formal approval to; to give legal or formal warrant to (a person) to do something; to empower, permit authoritatively." *See also, Webster's New Universal Unabridged Dictionary* (2d ed.). Its meaning is clear.[2] The fact that the defendant now contends that he did not know prior to being told by Officer Music that he was not authorized to wear the patches with the official Phoenix Police Department insignia does not render the word "authorize" unconstitutionally vague. Rather, the defendant understood the word but allegedly did not know that to wear the insignia was not permitted.

The defendant also claims that the word "authorize" is vague because it gives law enforcement officers discretion whether to enforce Code section 23–21. He illustrates his point by claiming that the spouses and children of Phoenix Police officers wear hats and shirts with the department badges and insignia at picnics or outings without allowance to do so but that they are not prosecuted. He concludes that this demonstrates

---

1. The *Oxford English Dictionary* (1971) defines insignia as "distinguishing marks of office or honour." *See also, Webster's New International Dictionary* (2d ed.).

2. The word "authorize" or its variants is found in many criminal statutes. *See e.g,* A.R.S. § 13–1504(2) (unlawful to enter and look into residential structure without lawful "authority"); § 13–1803 (unlawful use of means of transportation is temporary "unauthorized" control over another's means of transportation); § 13–2104 (forgery of credit card is alteration of credit card without the express "authorization" of the issuer); § 13–2316(B) (computer fraud includes altering or destroying any computer without "authorization").

that the ordinance is vague because the city can arbitrarily enforce it.

■ As a preliminary issue, there is the question of the defendant's standing to make this argument. A statute "must of necessity be examined in the light of the conduct with which a defendant is charged." *Nat'l Dairy Products,* 372 U.S. at 33, 83 S.Ct. at 598.

> A defendant whose conduct is clearly proscribed by the core of the statute has no standing to attack the statute. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756 [94 S.Ct. 2547, 2562, 41 L.Ed.2d 439] (1974). *See also Broadrick v. Oklahoma,* 413 U.S. 601, 610 [93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830] (1973).

*Tocco,* 156 Ariz. at 119, 750 P.2d at 877.

Proceeding nonetheless to address the defendant's argument, the ordinance sufficiently defines the behavior prohibited: wearing the insignia of any city officer when not properly authorized to wear such insignia. The code section does not apply to a replica, facsimile or other likeness of an insignia. Thus, interpretation of the ordinance is not dependent on the judgment of police officers. To the contrary, the ordinance "gives fair and objective guidelines to both potential offenders and law enforcement personnel" exactly what behavior is prohibited. *Phillips,* 178 Ariz. at 371, 873 P.2d at 709. Further, it must be supposed that public "officers will act fairly and impartially and in accordance with their best judgment," and a statute will not be held unconstitutional because of a supposed possibility they will not do so. *Brady v. Mattern,* 125 Iowa 158, 100 N.W. 358, 362 (1904).

■ When the language is clear, the statute is not rendered unconstitutionally vague because there is a theoretical potential for arbitrary enforcement or the exercise of discretion by a law enforcement officer or prosecutor, or even if the conduct is prevalent and ignored. *Matter of Pima County Juve-* *nile App. No. 74802–2,* 164 Ariz. 25, 29, 790 P.2d 723, 725 (1990). Indeed, statutes that require some assessment by a law enforcement officer or prosecutor of the surrounding circumstances consistently have been upheld against vagueness challenges. For example, in *State v. Miller,* 260 Ga. 669, 398 S.E.2d 547 (1990), the Georgia Supreme Court ruled constitutional an anti-mask statute directed primarily at persons wearing Ku Klux Klan regalia. The defendant argued that the statute was vague and subject to arbitrary enforcement because, by its terms, it also prohibited wearing a ski mask in winter or sunglasses on a sunny day. Noting that the purpose of the anti-mask law was to prevent conduct provoking a reasonable apprehension of intimidation, threats or violence, the court concluded that the statute was not unconstitutionally vague because persons of ordinary intelligence could readily discern when behavior would or would not be criminal. *Id.* 398 S.E.2d at 552. It gave as an illustration a person wearing a ski mask in winter who would not warrant alarm unlike a person wearing a ski mask in summer while entering a bank. *Id.* Measured by the standard of "common understanding and practice," *United States v. Petrillo,* 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947), Code section 23–21 is not void for vagueness because it sufficiently warns against the proscribed conduct.

### D. Violation of First Amendment

The defendant contends that the ordinance on its face violates his First Amendment right of free speech.[3] In support of his position, he relies on *Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), wherein the defendant, wearing as a costume a United States Army uniform, participated in a skit protesting American involvement in Vietnam. He was convicted under a federal statute which made it a crime to wear a military uniform without authority to do so. A statutory exception provided,

---

**3.** The First Amendment to the United States Constitution provides, in part, that there "shall" be "no law ... abridging the freedom of speech." While the defendant also refers to Article 2, section 6, of the Arizona Constitution (the state counterpart to the First Amendment), because he only relies on cases interpreting the First Amendment, we do not separately discuss the Arizona Constitution.

however, that an actor in a theatrical production "may wear the uniform of that armed force if the portrayal does not tend to discredit that armed force." The Court in *Schacht* was concerned solely with the last portion of the statutory exception, specifically stating:

Our previous cases would seem to make it clear that 18 U.S.C. § 702, making it an offense to wear our military uniforms without authority is, standing alone, a valid statute on its face. But the general prohibition of 18 U.S.C. § 702 cannot always stand alone in view of 10 U.S.C. § 772 which authorizes the wearing of military uniforms under certain conditions and circumstances including the circumstance of an actor portraying a member of the armed serves in a "theatrical production."

*Id.* at 61, 90 S.Ct. at 1558 (citations omitted). The Court held that the clause restricting authorization to those dramatic portrayals which do not "tend to discredit" the military was an unconstitutional abridgement of the freedom of speech. *Id.* at 62–63, 90 S.Ct. at 1558–59.

It is for that reason, though, that *Schacht* is distinguishable from this case. In *Schacht*, the statute contained a content-based qualification on political speech. Such restrictions are subject to the most exacting scrutiny. *See Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (District of Columbia prohibition against displaying signs within 500 feet of embassy "bringing foreign governments in disrepute" was content-based restriction on political speech violative of First Amendment.). Code section 23–21, on the other hand, is, on its face, content-neutral. It prohibits the unauthorized wearing of an official insignia without regard to a particular expressive activity or the political viewpoint communicated by the wearer.

The defendant argues that to wear the insignia was a form of expressive speech

integral to the spoken presentation of his political views. He relies on *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), as well as a line of other United States Supreme Court flag-desecration cases and additional cases involving symbolic speech.[4]

■■■■ In *Johnson*, the defendant was convicted of burning a United States flag contrary to a Texas statute making flag-desecration a crime. In reversing the conviction, the Court stated that, although the First Amendment encompasses both speech and expressive conduct, "[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Id.* at 406, 109 S.Ct. at 2540. In articulating when the state may regulate symbolic speech consistent with the First Amendment, the Court stated that, first, it must be decided if the conduct is indeed expressive. The test is whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.* at 404, 109 S.Ct. at 2539 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730–31, 41 L.Ed.2d 842 (1974)). If the conduct is expressive, the court must next decide whether the state's regulation is "related to the suppression of free expression." *Id.* at 403, 109 S.Ct. at 2539. If the state's regulation is not related to expression, then the less-stringent standard for regulation of non-communicative conduct controls as applied in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). (federal statute making it a crime to burn Selective Service card did not violate First Amendment). *Id.* If the state's regulation is related to expression, then the court determines whether the governmental interest justifies the conviction under a more "demanding standard" as applied in *Spence*, 418 U.S. at 414–15, 94 S.Ct. at 2732–33 (defen-

---

4. *See e.g., United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990); *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974); *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Street v. New York*, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

dant displaying United States flag upside down with peace symbol on it engaged in constitutionally-protected activity). *Id.* at 403–04, 109 S.Ct. at 2538–40.

■ Wearing an official Phoenix Police Department insignia in the context in which the defendant was wearing it was expressive conduct. The defendant conceded that he wore the insignia in order to convey a message that he was a former Phoenix Police officer advocating certain political ideas.[5] He also admitted that the insignia was intended to imbue his political beliefs with an aura of importance.

■ Since the ordinance is not related to the suppression of free expression, the less-stringent standard of *O'Brien* applies. A four-part test is used to determine when a governmental interest sufficiently justifies the regulation of expressive conduct:

> ... if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679.

By its terms, Code section 23–21 neither attempts to regulate or restrict the content of the defendant's expression, nor is it "directed at the communicative aspect of [the defendant's] conduct." *Bird,* 184 Ariz. at 205, 908 P.2d at 19. It does not burden "core political speech," which then would prompt "exacting scrutiny." *See McIntyre v. Ohio Elections Commission,* 514 U.S. 334, 347, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426 (1995). Except for the city's bar to wearing an official insignia, the defendant is otherwise free to express his political views.

The City of Phoenix has a legitimate governmental interest in regulating the use of its official insignia. The police insignia has a "communicative force all its own." *Thomas v. Whalen,* 51 F.3d 1285, 1291 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 518, 133 L.Ed.2d 426 (1995). Its unauthorized use jeopardizes the appearance of political neutrality and impartiality of the Phoenix Police Department and the city, particularly because the insignia is itself the imprimatur of authority.

Such governmental interest has been discussed in analogous cases dealing with statutes or regulations restricting the political and speech activities of government employees. The United States Supreme Court in *United States Civil Service Commission v. National Ass'n of Letter Carriers,* 413 U.S. 548, 565, 93 S.Ct. 2880, 2890–91, 37 L.Ed.2d 796 (1973), recognized the interests of the federal government in restricting the political activities of its employees to maintain an appearance of neutrality.

In *Thomas v. Whalen,* 51 F.3d 1285, a police officer challenged on First Amendment grounds disciplinary action against him after he had made an unauthorized appearance for the National Rifle Association while wearing his official uniform. The court found that the state's interests outweighed the defendant's First Amendment rights. The defendant was free to express his ideas but he could not "exploit [his] rank ... for the purpose of enhancing credibility for personal or political gain." *Id.* at 1291.

In *Paulos v. Breier,* 507 F.2d 1383 (7th Cir.1974), it was held that a police officer's First Amendment rights to publicly urge support for a political candidate were outweighed by the rights of the City of Milwaukee because "a municipality has [ ] interests in preserving the apolitical nature of its police force." *Id.* at 1385. In *Detroit Fire Fighters Ass'n, Local 334 v. City of Detroit,* 508 F.Supp. 172 (E.D.Mich.1981), the court held that the First Amendment did not pre-

---

5. The defendant, had he been still employed by the Phoenix Police Department, nonetheless would have been prohibited from wearing his uniform at the gun show to promote his political beliefs. "[N]o court has recognized a right to exploit one's rank in public employment solely for the purpose of enhancing credibility for personal or political gain—in effect, to use the fact of public employment as a 'soap box' from which the employee can advocate a political position on an issue of public debate." *Thomas v. Whalen,* 51 F.3d 1285, 1291 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 518, 133 L.Ed.2d 426 (1995).

vent the city from restricting the public appearances of uniformed firefighters to advocate defeat of a charter amendment.

The City of Phoenix has a legitimate governmental interest in restricting the use of its official insignia when the use serves to advance personal political views of the wearer. The city's tenable interest outweighs the individual's interest in advocating those views while wearing such an insignia. As in *O'Brien*, the governmental interest is important and substantial, and the interest is unrelated to the regulation of free expression. 391 U.S. at 376–77, 88 S.Ct. at 1678–79. Moreover, the restriction on free expression is minimal. "[A]ny impact on First Amendment rights is only incidental." *Bird*, 184 Ariz. at 205, 908 P.2d at 19. The ordinance does not violate the defendant's First Amendment rights.

*E. Overbreadth*

As a related issue, the defendant argues that the statute is overbroad because it prohibits wearing official insignia without authorization under all circumstances, including at home, at social events, in photographs, dramatic presentations, video productions or satirical presentations, or during political protests. He argues that wearing the insignia in these situations is either harmless or directly infringes upon First Amendment rights of expression.

"An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but ... includes within its scope activities which are protected by the First Amendment." *State v. Baldwin*, 184 Ariz. 267, 269, 908 P.2d 483, 485 (1995) (quoting *State v. Jones*, 177 Ariz. 94, 99, 865 P.2d 138, 143 (App.1993)). The defendant's conduct does not come within the areas in which he claims the ordinance is overbroad. Thus, unless the challenged legislation, "by its terms, regulates the exercise of first amendment rights, its constitutionality may not be challenged on the ground that it might apply to parties not before the court." *Cacavas v. Bowen*, 168 Ariz. 114, 117, 811 P.2d 366, 369 (App.1991).

This exception to the ordinary rule of standing has been carved out in the First Amendment area because the very existence of an overbroad statute may have a chilling effect on persons not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). In *Broadrick*, the Court found constitutional an Oklahoma statute prohibiting partisan political activities of state employees. Although the conduct of the employees challenging the statute fell within its core, because the statute covered potentially-protected expression, the litigants were permitted to challenge its constitutionality. However, as noted by the Court, "... where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep ... and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 615–16, 93 S.Ct. at 2917–18. In *Broadrick*, the challenged statute validly prohibited many activities but it also forbade constitutionally-protected exercises. Nonetheless, the Court found that it was not necessary to discard the statute *in toto* and that improper applications of the statute could be dealt with as the situation arose. *Id.* at 618, 93 S.Ct. at 2919.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). To claim "substantial overbreadth" is appropriate in cases when, "despite some possibly impermissible application, the remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct." *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 964–65, 104 S.Ct. 2839, 2850–52, 81 L.Ed.2d 786 (1984) (citations omitted).

If the Court believes that the statute is so sweeping that it would deter persons from engaging in protected speech, or that the

statute may be used on an arbitrary basis against political dissenters, the Court will strike the law as overbroad. If the Court believes that there is little chance that the statute will deter constitutionally protected speech, or will be used in a selective manner to punish dissenters, it will uphold the law and allow it to be applied on a "case-by-case" basis. Ronald D. Rotunda & John E. Nowak, 4 *Treatise on Constitutional Law: Substance and Procedure 2nd,* § 20.8, p. 32 (1992). Thus, to prevail on an overbreadth claim, "[t]here must be a realistic danger that the statute will *significantly* jeopardize recognized first amendment protections of individuals not before the court." *Steiger,* 162 Ariz. at 144, 781 P.2d at 622 (citation omitted) (emphasis original); *see State v. Western,* 168 Ariz. 169, 812 P.2d 987 (1991) (ordinance prohibiting striptease performances substantially overbroad because prohibited broad range of legitimate artistic expression); *State v. Weinstein,* 182 Ariz. 564, 898 P.2d 513 (App.1995) (theft-by-extortion statute substantially overbroad because it criminalized many "threats" common in everyday business).

The defendant relies on *Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), and *Lewis v. New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), to support his claim that the ordinance is overbroad. In *Hill,* the ordinance prohibited speech that "interrupted a police officer in the execution of his duty." *Id.* at 455, 107 S.Ct. at 2506. In *Lewis,* the ordinance made it unlawful to use "obscene or opprobrious" language toward a police officer. 415 U.S. at 132, 94 S.Ct. at 972. Those cases are distinguishable because the statutes prohibited a wide range of protected speech.

 Code section 23–21 is not substantially overbroad. The core of the ordinance regulates the wearing of official insignia and is directed at activities in which wearing such insignia compromises the appearance of neutrality and impartiality of the police, fire or other city department. The ordinance is not "a censorial statute, directed at particular groups or viewpoints." *Broadrick,* 413 U.S. at 616, 93 S.Ct. at 2918. There is no realistic danger that the ordinance will significantly infringe upon First Amendment rights, will deter constitutionally-protected speech or will be used selectively to punish dissenters. Accordingly, the law is not unconstitutionally overbroad.

### CONCLUSION

For the reasons discussed above, we hold that Phoenix City Code section 23–21 is facially valid. We therefore affirm the judgment of the superior court and thereby affirm the defendant's conviction and sentence.

GRANT, P.J., and NOYES, J., concur.