65 P.3d 469

STATE of Arizona, Appellee,

v.

G. Robert MUTSCHLER, Ruth Van
Brunschot, Milo J. Fencl, and
Frank Magarelli, Appellants.

Nos. 1 CA–CR 02–0002, 1 CA–CR 02–0003,
1 CA–CR 02–0004, 1 CA–CR 02–0005.

Court of Appeals of Arizona,
Division 1, Department C.

April 1, 2003.

\* The Honorable Eileen Willett, a judge of the Maricopa County Superior Court, was authorized to participate as a Judge *Pro Tempore* of the Court of Appeals by order of the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 31 of the Arizona Constitution and Arizona Revised Statutes section 12–145 *et seq.* (1992 & Supp.2002).

Peter Van Haren, City Attorney By Brian W. Rock, Assistant City Prosecutor, Phoenix, Attorneys for Appellee.

Hentoff Law Office By Nicholas S. Hentoff, Phoenix, Attorneys for Appellants.

## OPINION

IRVINE, Judge.

¶ 1 The sole issue on appeal is whether Phoenix City Code ("P.C.C.") § 23–54 (1999) as written at the time of the defendants' convictions was unconstitutionally vague and/or overbroad.[1] For the following reasons, we find the ordinance was neither vague nor overbroad and we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The defendants were convicted in Phoenix City Court for violating P.C.C.

§ 23–54. Section 23–54 prohibits persons from operating live sex act businesses. A "live sex act business" is defined as "any business in which one or more persons may view, or may participate in, a live sex act for a consideration." P.C.C. § 23–54(B)(3). "Live sex act" is defined as "any act whereby one or more persons engage in a live performance or live conduct which contains sexual contact, oral sexual contact, or sexual intercourse." P.C.C. § 23–54(B)(2). The offenses were alleged to have occurred in February or March of 1999.

¶ 3 The defendants appealed their convictions to the superior court, arguing that the ordinance was unconstitutionally vague and/or overbroad. The superior court found that the ordinance was not vague and that the defendants lacked standing to claim the ordinance was overbroad and affirmed the defendants' convictions and sentences.[2]

## DISCUSSION

¶ 4 On appeal, the defendants continue to assert that P.C.C. § 23–54 is unconstitutionally vague and/or overbroad. Because this matter originated in municipal court, "[o]ur jurisdiction is limited to a review of the facial validity of the [ordinance]." *State v. McMahon*, 201 Ariz. 548, 550, ¶ 3, 38 P.3d 1213, 1215 (App.2002); *see also* Ariz. Rev.Stat. ("A.R.S.") § 22–375 (2002). We may not examine the application of the ordinance to these particular defendants. *McMahon*, 201 Ariz. at 550, ¶ 3, 38 P.3d at 1215. We review de novo whether a statute is constitutional. *Id.* at ¶ 5. In so doing, we presume the ordinance is constitutional. *Id.* If possible, we must construe the ordinance in a manner that renders it constitutional. *Id.* "In construing a legislative enactment, we apply a practical and commonsensical construction." *State v. Alawy*, 198 Ariz. 363,

---

1. P.C.C. § 23–54 has been amended since the defendants' convictions. *See* P.C.C. § 23–54 (2002). We address only the constitutionality of that version of the ordinance in effect at the time the offenses were committed. Unless otherwise indicated, any reference to any other ordinance or regulation in this decision refers to that version of the ordinance or regulation in effect at the time the offenses were committed.

2. The defendants were also among the plaintiffs who sought a preliminary injunction in a pre-enforcement challenge to P.C.C. § 23–54 in federal district court. .In denying plaintiffs' motion, the district court found the ordinance was neither vague nor overbroad. *See Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 83 F.Supp.2d 1072 (D.Ariz.1999), *affirmed*, 238 F.3d 430, 2000 WL 1387443 (9th Cir.2000).

365, ¶ 8, 9 P.3d 1102, 1104 (App.2000). If we find the ordinance is constitutional on its face, our inquiry ends. *McMahon,* 201 Ariz. at 550, ¶ 3, 38 P.3d at 1215.

## I. Standing

¶ 5 "Ordinarily, a defendant may not challenge a statute as being impermissibly vague or overbroad where the statute has given him fair notice of the criminality of his own conduct, even though the statute may be unconstitutional when applied to someone else." *Id.* at ¶ 6. We find that the defendants have standing to bring a vagueness challenge. The defendants' arguments include the assertion that terms within the ordinance are subject to varying interpretations and/or meanings. Assuming this is true, it can reasonably be argued that the ordinance does not reasonably define exactly what conduct is prohibited.

¶ 6 We likewise find the defendants have standing to challenge the ordinance based on alleged overbreadth. "Under some circumstances, litigants whose own activities are constitutionally unprotected can nonetheless challenge a statute as overbroad if the law 'substantially abridges the First Amendment rights of other parties not before the court.' " *State v. Musser,* 194 Ariz. 31, 32, ¶ 5, 977 P.2d 131, 132 (1999) (citations omitted). Here, the defendants contend in part that the ordinance affected the activities of nude performers in sexually oriented businesses. Some forms of nude dancing have been found to be marginally "within the outer perimeters of the First Amendment." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Therefore, we find the defendants have standing to argue that the ordinance was overbroad.

## II. Vagueness

¶ 7 The defendants assert that the ordinance is unconstitutionally vague on several grounds. They allege that several of the terms within the ordinance are susceptible to a wide range of interpretation that encourage arbitrary and discriminatory enforcement. The defendants further argue that the presence of other ordinances that purportedly permit activities prohibited by § 23–54 render § 23–54 itself unconstitutionally vague.

¶ 8 "A statute is unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit instructions for those who will apply it." *McMahon,* 201 Ariz. at 551, ¶ 7, 38 P.3d at 1216 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Further, the statute must provide objective standards to be applied by those charged with enforcing the law. *Id.* Absolutely precise language is not required to render a statute constitutionally valid. *State v. Baldwin,* 184 Ariz. 267, 270, 908 P.2d 483, 486 (App.1995).

¶ 9 The defendants first attack the ordinance by asserting that the use of the word "may" in the definition of "live sex act business" encourages arbitrary or discriminatory enforcement. The defendants argue that the use of "may" criminalizes conduct a business owner can neither control nor anticipate and that it criminalizes a "potential act."

¶ 10 We find the use of the undefined term "may" does not render the ordinance unconstitutionally vague. First, the defendants take "may" out of context. It is clear from the wording of the ordinance, especially in the context of the various defined terms, that "may" in this instance is "used to express ability or power." *Webster's New World College Dictionary* 889 (2000). "May" in this sense can be "generally replaced by CAN." *Id.* The ordinance does not simply prohibit operation of businesses where people *might possibly or potentially* view or participate in a live sex act. It prohibits operation of businesses where persons pay consideration to enter and remain on the premises to view or participate in live sex acts. We believe the ordinance is written so that persons of ordinary intelligence will understand that they may not operate such a business.

¶ 11 The defendants also attack the phrase "for a consideration." They claim the use of the phrase "for a consideration" renders the ordinance unconstitutionally vague as it implies viewing or participating in the live sex act must be "quid pro quo—for con-

sideration." This argument also fails. Consideration is defined as follows:

Consideration means the payment of money or the exchange of any item of value for:

a. The right to enter the business premises, or any portion thereof, or

b. The right to remain on the business premises, or any portion thereof, or

c. The right to purchase any item permitting the right to enter, or remain on, the business premises, or any portion thereof, or

d. The right to a membership permitting the right to enter, or remain on, the business premises, or any portion thereof.

P.C.C. § 23–54(B)(1). The defendants' interpretation of the term consideration is strained. When viewed in the context of the term as defined, it is clear that "consideration" means the exchange of money or any item of value that allows the person who paid to enter and remain on the premises. It does not even hint at a sex-for-money exchange as implied by the defendants. We do not find that the term "consideration," as defined, renders the ordinance unconstitutionally vague. Persons of ordinary intelligence will understand what is prohibited.

¶ 12 The defendants also argue that P.C.C. § 23–54 is rendered unconstitutionally vague because it applies to other businesses regulated by other Phoenix city ordinances. Specifically, the defendants argue that adult motels, adult cabarets, and topless bars "squarely" fall under the ambit of § 23–54. The defendants contend that § 23–54 is unconstitutionally vague because other ordinances regulating these businesses purportedly permit activities prohibited by § 23–54. The defendants' argument focuses on the definition of "live sex act." " 'Live sex act' means any act whereby one or more persons engage in a live performance or live conduct which contains sexual contact, oral sexual contact, or sexual intercourse." P.C.C. § 23–54(B)(2). The defendants contend that "live sex acts" in one form or another are permitted by ordinances regulating adult cabarets, adult motels, and businesses with nude and/or semi-nude dancing. According to the defendants, this renders the ordinance unconstitutionally vague.

¶ 13 The ordinances and other regulations which address sexually oriented businesses such as adult cabarets and adult motels do not permit the live sex acts prohibited in P.C.C. § 23–54. Nothing in the ordinances governing adult motels expressly or impliedly permits the operation of a business in which patrons pay consideration as defined to view or participate in live sex acts. *See* P.C.C. § 10–131(5)(1998). The defendants essentially argue that "everybody knows what goes on in adult motels." However, while we can conceive of an adult motel which operates as a "live sex act business" and therefore violates the provisions of P.C.C. § 23–54, we see no conflict between the ordinances establishing and regulating "legitimate" adult motels which do not violate P.C.C. § 23–54, and those ordinances which prohibit live sex act businesses.

¶ 14 Next, the defendants assert P.C.C. § 10–131(3), which defines "adult cabaret," permits sexual activities which include, among many other things, fondling various parts of the body, including the female breasts. *See* P.C.C. § 10–131(3) and (24). The defendants note that fondling and/or touching female breasts is an activity prohibited as "sexual contact" in P.C.C. § 23–54. The defendants further assert that P.C.C. § 6–15(B) does not expressly prohibit such activity in topless bars.

¶ 15 The defendants are incorrect that ordinances which address adult cabarets or topless bars permit such activity because such activities are expressly prohibited by the Phoenix City Code. Section 10–139(B)(7) (1998), P.C.C., provides that the license of a sexually oriented business shall be revoked if a licensee, manager or employee has knowingly allowed, among other things, any act of sexual contact to occur in or on the licensed premises. "Sexual contact" includes any direct or indirect touching, fondling, or manipulating any part of the female breast. *Id.* (citing A.R.S. § 13–1401(2)(2001)). Further, the provisions of the Arizona Administrative Code regarding liquor licenses specifically prohibit any simulated or actual touching,

caressing, or fondling of the breast of any person on licensed premises. Ariz. Admin. Code ("A.A.C.") R19-1-236 (renumbered as R19-1-214).

¶ 16 The applicable ordinances and rules reasonably inform employees of such facilities as to the limits of their permitted activities. The prohibitions regarding live sex act businesses found in P.C.C. § 23-54 do not conflict with any other city ordinance or State law regarding sexually oriented businesses. Adult motels, adult cabarets, and topless bars may operate in compliance with the ordinances and rules without violating the provisions of P.C.C. § 23-54. Moreover, the regulations do not foster arbitrary enforcement. For the above reasons, we find that P.C.C. § 23-54 is not unconstitutionally vague.

### III. Overbreadth

¶ 17 The defendants further assert that P.C.C. § 23-54 is unconstitutional because it is overbroad. "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but ... includes within its scope activities which are protected by the First Amendment." *State v. McLamb*, 188 Ariz. 1, 9, 932 P.2d 266, 274 (App.1996) (citations omitted). "There must be a realistic danger that the statute will significantly jeopardize recognized first amendment protections of individuals not before the court." *Id.* at 10, 932 P.2d at 275. If the statute will not likely deter constitutionally protected activity, we will uphold the law and allow it to be applied on a "case-by-case" basis. *Id.*

¶ 18 The defendants offer a cursory argument that the ordinance is overbroad. The defendants revive the argument that P.C.C. § 6-15 does not prohibit and actually permits performers to directly or indirectly touch, fondle, or manipulate their own breasts. The defendants follow with the non sequitur that P.C.C. § 23-54 therefore infringes on the constitutionally protected right to engage in such conduct because nude dancing has been found to be expressive conduct within the outer perimeters of the First Amendment.

¶ 19 Other than to cite *Barnes v. Glen Theatre, Inc.*, 501 U.S. at 566, 111 S.Ct. 2456, regarding nude dancing, the defendants provide virtually no legal analysis in support of their position that to touch or fondle one's own breasts during a nude or erotic dance is constitutionally protected. We find that *Barnes* does not support the defendants' interpretation.

¶ 20 In *Barnes*, the United States Supreme Court upheld a statute which required nude dancers to wear pasties and G-strings. In upholding the statute, the Supreme Court stated that "the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic." *Id.* at 571, 111 S.Ct. 2456. For a dancer to fondle her breasts during an erotic performance is far more "graphic" than the mere exposure *Barnes* held could be constitutionally prohibited. As in *Barnes*, whatever message a dance may convey will remain. The defendants do not direct us to any other authority providing that such activity is constitutionally protected conduct.

¶ 21 We find there is no realistic danger that P.C.C. § 23-54 will significantly jeopardize *recognized* First Amendment protections of nude or erotic dancers/performers. The ordinance is not overbroad. Therefore, we uphold the law and allow it to be applied on a "case-by-case" basis.

### CONCLUSION

¶ 22 For the above reasons, we find that P.C.C. § 23-54 is constitutionally valid on its face. We affirm the decision of the superior court.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge and SHELDON H. WEISBERG, Judge.