23 P.3d 675

**CITY OF TUCSON, Plaintiff/Appellee,**

v.

**Molly GREZAFFI, Defendant/Appellant.**

**No. 2 CA–CV 00–0172.**

Court of Appeals of Arizona,
Division 2, Department A.

May 15, 2001.*

* The opinion filed on May 10, 2001 was vacated and refiled as modified on May 15, 2001.

Michael D. House, Tucson City Attorney, By Laura Brynwood and M.J. Raciti, Tucson, for Plaintiff/Appellee.

Edmund D. Kahn, Tucson, for Defendant/Appellant.

*OPINION*

PELANDER, J.

¶ 1 Appellant Molly Grezaffi, owner of a Tucson restaurant called Molly G's, challenges the constitutionality of the City of Tucson's restaurant smoking ordinance, Tucson Code § 11–19. We conclude that the ordinance is facially valid.

**BACKGROUND**

¶ 2 In October 1999, Grezaffi was cited on a civil infraction for having violated Code § 11–19(E)(2) which, inter alia, prohibits restaurant owners from allowing persons to smoke in restaurants except in a designated smoking area and from allowing smoke to diffuse or drift from a designated smoking area into a nonsmoking area. After an evidentiary hearing, a Tucson City Court magis-

trate found Grezaffi responsible, imposed a fine or community service, and ordered her to abate the violation. Pursuant to A.R.S. § 22–425(B) and applicable rules,[1] Grezaffi appealed to superior court, which, after briefing and oral argument, denied the appeal. This appeal followed.

**DISCUSSION**

¶ 3 Although Grezaffi raises four issues on appeal, jurisdictional constraints limit our review to only one: the constitutionality of Code § 11–19. Section 22–375, A.R.S., permits an appeal from a superior court's final judgment in an action appealed from a municipal court only in limited circumstances, including actions that involve "the validity of a ... municipal fine or statute." Our review, however, is strictly limited to the facial validity of the ordinance at issue. *See State v. Jean*, 98 Ariz. 375, 376, 405 P.2d 808, 809 (1965); *State v. Watson*, 198 Ariz. 48, ¶ 5, 6 P.3d 752, ¶ 5 (App.2000). Our jurisdiction does not extend to examining the application of the ordinance to an individual defendant. *Watson*. *See also State v. McLamb*, 188 Ariz. 1, 4, 932 P.2d 266, 269 (App.1996); *State v. Bolan*, 187 Ariz. 159, 160, 927 P.2d 819, 820 (App.1996).

¶ 4 Thus, we do not address Grezaffi's various contentions that Code § 11–19 is invalid as applied to her because she allegedly was operating a "private club" rather than a public restaurant when the City cited her; that the evidence presented at the City Court hearing was insufficient to support the magistrate's ruling, *see State v. Jacobson*, 121 Ariz. 65, 67, 588 P.2d 358, 360 (App.1978), *overruled on other grounds, Levitz v. State*, 126 Ariz. 203, 613 P.2d 1259 (1980); or that the City's ordinances that govern appointment and retention of city magistrates are invalid and deprived her of "a fair hearing from an impartial tribunal."[2] And, although Grezaffi contends the ordinance violates a laundry list of various provisions in the United States and Arizona Constitutions, we address only those arguments that she at least

---

1. *See* Superior Ct. R.App. P.—Civil 1, 17B A.R.S.; Local Rules of Practice and Procedure in City Court Civil Proceedings 23(a), City of Tucson, 17B A.R.S. *See also* Ariz. Const. art. VI, § 16.

2. The superior court declined to address this last argument because Grezaffi waived the issue by not raising it in City Court.

minimally supports with "reasons" and authoritative "citations," as Rule 13(a)(6), Ariz. R. Civ.App. P., 17B A.R.S., requires.[3] *See State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised."); *Brown v. United States Fidelity & Guar. Co.,* 194 Ariz. 85, ¶ 50, 977 P.2d 807, ¶ 50 (App.1998).

 ¶ 5 The constitutionality of an ordinance is a question of law subject to our de novo review. *City of Tucson v. Rineer,* 193 Ariz. 160, ¶ 12, 971 P.2d 207, ¶ 12 (App.1998). The party challenging the validity of an ordinance has the burden of overcoming a strong presumption that it is constitutional. *Id. See also City of Phoenix v. Oglesby,* 112 Ariz. 64, 65, 537 P.2d 934, 935 (1975). When a reasonable, even though debatable, basis supports an ordinance, we will uphold the ordinance unless it is clearly unconstitutional. *See In re Brandon H.,* 195 Ariz. 387, ¶ 8, 988 P.2d 619, ¶ 8 (App.1999).

¶ 6 The ordinance at issue, Code § 11–19, was adopted in 1999 and is entitled, "Regulation of smoking in restaurants." With certain exceptions not applicable here, the ordinance provides that "[a]ll restaurants shall be smokefree." Code § 11–19(B). The ordinance defines "restaurant" as follows:

Restaurant means a facility regularly open for the primary purpose of serving food prepared for consumption, either on or off the premises, to customers for compensation, including those that also serve alcoholic beverages from an accessory bar. For purposes of this section only, a "restaurant" shall have annual gross revenue from the sale of food exceeding fifty (50) percent for every consecutive twelve (12) month period. Excluding, however, food such as appetizers, snacks, and other food products consumed in an accessory bar which the owner chooses to designate as a smoking area under this section. Code § 11–19(A)(5).[4] As noted in ¶ 2 above, the ordinance, inter alia, makes it "unlawful and a civil infraction for any person who owns, manages, operates, or otherwise controls a restaurant or facility regulated by [§ 11–19] to ... [a]llow[ ] a person to smoke in a restaurant except in an area designated as a smoking area" or to "[a]llow[ ] smoke from a designated smoking area to diffuse or drift into a non-smoking area." Code § 11–19(E)(2)(a), (b).

## I. Authority to Adopt Ordinance

 ¶ 7 Grezaffi contends "the City's attempt to address the perceived health issue of smoking in food establishments by adoption of [§ 11–19] is ultra vires and therefore invalid," arguing the City lacks lawful authority to promulgate health rules or regulations. None of the statutes on which Grezaffi relies, A.R.S. §§ 36–132, 36–182, 36–184, supports her argument. Those statutes, which relate only to the powers, duties, and procedures of the Arizona Department of Health Services and county health departments, do not expressly or implicitly invalidate the ordinance here.

 ¶ 8 As a charter city, the City of Tucson "may exercise all powers granted by its charter, provided that the exercise is not inconsistent with either the constitution or general laws of the state." *Rineer,* 193 Ariz. 160, ¶ 2, 971 P.2d 207, ¶ 2. Pursuant to its charter, the mayor and city council are empowered to "make all regulations which may be necessary or expedient for the preservation of the health and the suppression of

**3.** Grezaffi's opening brief is deficient in several respects. It fails to set forth any standard of review and related citations for any of her arguments. In addition, as noted above, most of her constitutional "arguments" are unaccompanied by any legal analysis. Thus, we do not address Grezaffi's cryptic suggestion that the ordinance somehow violates the constitutional prohibition against state laws "impairing the Obligation of Contracts," U.S. Const. art. I, § 10, or various rights under article II of the Arizona Constitution.

**4.** The ordinance defines a "[b]ar" as

those business premises where the Arizona Department of Liquor Licenses and Control has licensed the retail sale and on-site consumption of alcoholic beverages, and fifty (50) percent or more of the business' gross annual revenues, for every consecutive twelve (12) month period, are derived from the sale of alcoholic beverages.

Code § 11–19(A)(2). The ordinance also defines an "[a]ccessory bar" and a "[d]esignated smoking area." Code § 11–19(A)(1), (3).

disease" and to "adopt and enforce by ordinance all such measures ... deem[ed] expedient or necessary for the promotion and protection of the health, comfort, safety, life, welfare and property of the inhabitants of the city." Tucson Charter, ch. VII, §§ 1(28), 1(32). Moreover, "safeguarding the general health, safety, and welfare of the community has long been considered a proper goal for municipal government." *Watson,* 198 Ariz. 48, ¶ 15, 6 P.3d 752, ¶ 15. Contrary to Grezaffi's contention, that the City authorizes Pima County health officers to *enforce* any Code provisions "pertaining to health, sanitation, food and food establishments," Code § 2–15, does not negate the City's authority to promulgate ordinances relating to public health and welfare. Accordingly, we reject Grezaffi's assertion that the City "has no power to regulate health matters."

## II. Preemption

¶ 9 In a related argument, Grezaffi contends the state "has appropriated the field [of regulating health matters] by establishing the State Department of Health and local boards of health" pursuant to §§ 36–132, 36–182, and 36–184. Although Grezaffi does not use the term "preemption," to the extent she argues that smoking in restaurants is exclusively a matter of statewide concern beyond the realm of municipal regulatory action, we reject the argument. Both a city and state may legislate on the same subject when it is of local concern. *Rineer,* 193 Ariz. 160, ¶ 3, 971 P.2d 207, ¶ 3. When the subject is also of statewide concern and the legislature clearly has appropriated the field by enacting a pertinent, governing statute, however, that statute controls and renders any contrary local ordinances invalid. *Id.* "Simply because the state and local legislation 'touch upon a common element' does not mean that [an] ordinance is preempted." *McLamb,* 188 Ariz. at 4, 932 P.2d at 269, *quoting Jacobson,* 121 Ariz. at 70, 588 P.2d at 363. And, "[a]n ordinance will not be found invalid if a reasonable interpretation of it avoids conflict with a statute." *McLamb,* 188 Ariz. at 4, 932 P.2d at 269.

¶ 10 Regulation of smoking in restaurants is a matter of local concern. *See*

*Tri–Nel Management, Inc. v. Board of Health of Barnstable,* 433 Mass. 217, 741 N.E.2d 37, 42–43 (2001) (recognizing "ill effects of tobacco use, particularly when it involves minors, as a legitimate municipal health concern justifying municipal regulation of tobacco products"). Although it may also be a matter of statewide concern, Grezaffi "has not shown, and we do not find, any legislative intent, either express or implied, to prohibit all local ... regulation" of smoking in restaurants. *Rineer,* 193 Ariz. 160, ¶ 9, 971 P.2d 207, ¶ 9.

¶ 11 We note that several statutes do address public health issues and expressly prohibit smoking in specified locations. *See, e.g.,* A.R.S. §§ 36–601 (declaration of various "public nuisances dangerous to the public health"); 36–601.01 (prohibiting smoking in certain areas, including elevators, libraries, and various public waiting rooms); 36–601.02 (prohibiting smoking in state buildings); 36–798.03 (prohibiting tobacco products on school grounds or inside school buildings). But those statutes do not suggest a legislative intent to preempt municipal regulation of smoking in restaurants. Nor has Grezaffi established any conflict between Code § 11–19 and state law. On the subject of smoking in restaurants, neither the statutes she cites, §§ 36–132, 36–182, 36–184, nor any other state law "has so completely occupied the field that it [has] become[ ] the sole and exclusive law on the subject, leaving no room for any supplementary or additional local regulation." *Jacobson,* 121 Ariz. at 69, 588 P.2d at 362.

¶ 12 Accordingly, Tucson's smoking ordinance is not invalid on preemption grounds. *See Tri–Nel Management,* 741 N.E.2d at 44 (state statutes prohibiting smoking in various locations and restricting smoking in restaurants did not preempt or conflict with municipal regulation prohibiting smoking in all restaurants and bars because local ban "furthers, rather than frustrates, [state legislative] intent"); *Boreali v. Axelrod,* 71 N.Y.2d 1, 523 N.Y.S.2d 464, 517 N.E.2d 1350, 1357 (1987) (state statute that restricted smoking for narrow class of public locations did not preempt field of indoor smoking regulation); *Oregon Restaurant Ass'n v.*

*City of Corvallis,* 166 Or.App. 506, 999 P.2d 518, 519–20 (2000) (state's "Indoor Clean Air Act" did not preempt municipal ordinance prohibiting smoking in enclosed public spaces within city when no inconsistency or conflict existed between Act and ordinance). *Cf. Michigan Restaurant Ass'n v. City of Marquette,* 245 Mich.App. 63, 626 N.W.2d 418 (2001) (local ordinance that completely banned smoking in restaurants within city directly conflicted with restaurants' right under state statute "to designate a certain percentage of its seating capacity as seating for smokers"); *LDM, Inc. v. Princeton Regional Health Comm'n,* 336 N.J.Super. 277, 764 A.2d 507, 526 (2000) (local smoking ordinance preempted by state law that established pervasive, comprehensive, and exclusive scheme regulating "when, where, and under what circumstances smoking is allowed").

### III. Constitutional Claims

¶ 13 We also are unpersuaded by Grezaffi's scattershot and largely unsupported constitutional attack on the ordinance. Her contention that Code § 11–19 violates her First Amendment right to freedom of association borders on frivolous. That right protects "certain intimate human relationships," such as those that "attend the creation and sustenance of a family," and one's "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees,* 468 U.S. 609, 617–19, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462, 471–72 (1984). "As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty." *Id.* at 620, 104 S.Ct. at 3250–51, 82 L.Ed.2d at 472–73.

¶ 14 As this court has noted, "the United States Supreme Court ... has found no generalized right of social association under the First Amendment." *Kahn v. Thompson,* 185 Ariz. 408, 414, 916 P.2d 1124, 1130 (App.1995). Although "a considerable amount of private or intimate association" may occur "in many restaurants and other places of public accommodation, ... that fact alone does not afford the entity as a whole any constitutional immunity" from government regulation. *New York State Club Ass'n, Inc. v. City of New York,* 487 U.S. 1, 12, 108 S.Ct. 2225, 2233–34, 101 L.Ed.2d 1, 15 (1988). *See also City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18, 25–26 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."); *City of Cleveland v. Trzebuckowski,* 85 Ohio St.3d 524, 709 N.E.2d 1148, 1152 (1999) ("meeting one's friends at a billiard hall" is not a constitutionally protected form of association). In sum, the ordinance does not infringe on Grezaffi's constitutional right to freedom of association.

¶ 15 Grezaffi's equal protection argument also is unavailing. She contends the ordinance constitutes "class legislation at its worst and unconstitutionally discriminates against [her]" because it "selectively applie[s] *only* to restaurants, while excluding bars and bowling alleys." "Where a classification does not involve a suspect grouping or a constitutionally protected interest, a denial of equal protection will be found only if there is no rational basis for the classification." *Kahn,* 185 Ariz. at 413, 916 P.2d at 1129. "The same standard applies when the challenged discrimination *favors* a particular class." *Id.*

¶ 16 Grezaffi does not claim to be a member of any suspect class and, contrary to her suggestion, the law does not recognize any fundamental, constitutionally protected "right to smoke in the same area in which [one] choose[s] to eat." *See Kenyon v. Hammer,* 142 Ariz. 69, 83, 688 P.2d 961, 975 (1984) (fundamental right is one explicitly or implicitly guaranteed by constitution); *Watson,* 198 Ariz. 48, ¶ 8, 6 P.3d 752, ¶ 8 (right is "fundamental" if it is deeply rooted in our nation's history and tradition or so ingrained in concept of ordered liberty that neither justice nor liberty would exist if it were impaired); *cf. Gasper v. Louisiana Stadium & Exposi-*

*tion Dist.*, 577 F.2d 897, 898 (5th Cir.1978) (assuming, without deciding, that city "in the exercise of its police power could prohibit smoking in public stadiums"); *Craig v. Buncombe County Bd. of Educ.*, 80 N.C.App. 683, 343 S.E.2d 222, 223 (1986) ("The right to smoke in public places is not a protected right . . . .").

¶ 17 Accordingly, under the applicable rational basis test, we will uphold an ordinance as long as it is "rationally and reasonably related to furthering some legitimate governmental interest." *Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 566, 789 P.2d 1061, 1067 (1990). "Rational basis analysis looks at the ends sought to be achieved by the questioned legislation and the means employed to achieve those ends. Legislation is valid if the subject matter is within the [governmental entity's] power to regulate and if the means employed are reasonable." *Watson*, 198 Ariz. 48, ¶ 12, 6 P.3d 752, ¶ 12.

¶ 18 "[A]bsolute equality and complete conformity of legislative classifications are not constitutionally required." *Rossie v. State*, 133 Wis.2d 341, 395 N.W.2d 801, 807 (Ct.App.1986) (upholding against equal protection challenge statute that banned smoking in any enclosed area of governmental buildings but permitted smoking in bowling alleys and restaurants holding certain types of liquor licenses if sale of alcohol accounted for more than fifty percent of restaurant's receipts). Thus, because the government "may direct its laws against problems it perceives without covering the entire field of possible abuses," an ordinance "does not violate the equal protection clause merely because it is not all-embracing." *Id.*

¶ 19 Contrary to Grezaffi's contention, we have no difficulty concluding that the ordinance is "rationally and reasonably related to furthering some legitimate governmen-

tal interest." *Big D Constr.*, 163 Ariz. at 566, 789 P.2d at 1067. Significant scientific evidence suggests that smoking or exposure to second-hand smoke poses serious and substantial health risks.[5] Grezaffi does not contest that proposition. Because the ordinance's goal of promoting the public welfare by alleviating smoke-related health concerns in restaurants is self-evident, "we need look no further." *Watson*, 198 Ariz. 48, ¶ 14, 6 P.3d 752, ¶ 14. The ordinance unquestionably is a reasonable, legitimate means of "safeguarding the general health, safety, and welfare of the community." *Id.* at ¶ 15. *See Rossie. But see Alford v. City of Newport News*, 220 Va. 584, 260 S.E.2d 241, 243 (1979) (ordinance that prohibited smoking in restaurants except in specifically designated public smoking areas held unconstitutional as applied to restaurant operator because the "means employed" "hardly limit[ed] the amount of smoke in the air" and, thus, were "not reasonably suited to the achievement of the legislative goal").

¶ 20 That the ordinance's smoking ban does not apply to other establishments such as bars, bowling alleys, or billiard halls does not render it unconstitutional. " 'It is no requirement of equal protection that all evils of the same genus be eradicated or none at all.' " *Rossie*, 395 N.W.2d at 807, *quoting Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533, 539 (1949). "[M]ere underinclusiveness is not fatal to the validity of a law under the equal protection [clause] even if the law disadvantages an individual or identifiable members of a group." *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 471 n. 33, 97 S.Ct. 2777, 2804 n. 33, 53 L.Ed.2d 867, 908–09 n. 33 (1977) (citations omitted). Rather, "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to

---

5. *See Tri–Nel Management*, 741 N.E.2d at 41–42 n. 7 (noting several "scientific studies that identify [environmental tobacco smoke] exposure as a cause of numerous negative health effects," including "increased risk of the following medical conditions: stunted fetal growth leading to low birth weights, Sudden Infant Death Syndrome, respiratory ailments, eye and nasal irritation, nasal sinus cancer, lung cancer, and coronary heart

disease mortality."); *cf. Newark Valley Central Sch. Dist. v. Public Employment Relations Bd.*, 83 N.Y.2d 315, 610 N.Y.S.2d 134, 632 N.E.2d 443, 446 (1994) ("Secondhand smoke unquestionably poses health hazards...."). We also note that courses of study in Arizona public high schools may include "on the nature and harmful effects of . . . tobacco . . . and other dangerous drugs on the human system." A.R.S. § 15–712(A).

the legislative mind." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955). *See also Big D Constr.*, 163 Ariz. at 566, 789 P.2d at 1067 (rational basis test requires neither "perfect fit" nor total equality in practice); *State v. Hammonds*, 192 Ariz. 528, ¶ 11, 968 P.2d 601, ¶ 11 (App.1998) ("In seeking to protect the life and health of its citizenry, the legislature cannot be required to forego an effective prophylactic measure simply because it may be somewhat imprecise."). Moreover, as the court in *Rossie* noted: "The areas excepted from the [smoking ban], for the most part, do not present the same degree of risk to nonsmokers because those places can be avoided without great inconvenience to the nonsmoker" or "because nonsmokers are not present." 395 N.W.2d at 807.[6]

¶ 21 In an overlapping argument, Grezaffi contends the ordinance is an unconstitutional "special" law because it singles out one type of business, restaurants, for "special adverse treatment" and "bestows special favors on preferred groups" such as bars and bowling alleys. The Arizona Constitution provides that "[n]o local or special laws shall be enacted" in certain enumerated cases. Ariz. Const. art. IV, pt. 2, § 19. For example, that provision prohibits laws that "[g]rant[ ] to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises" or "[w]hen a general law can be made applicable." *Id.* § 19(13), (20). "The fundamental intent of these prohibitions on local or special laws is to prevent the enactment of statutes bestowing special favors on preferred groups or localities." *City of Tucson v. Woods*, 191 Ariz. 523, 529, 959 P.2d 394, 400 (App.1997).

¶ 22 In order to withstand a challenge as special legislation, a law must meet each of the following criteria: it must bear a rational relationship to a legitimate legislative objective; any classification the law creates "must apply uniformly to all cases and to all members within the circumstances provided for by the law"; and the law "must be elastic, or open, not only to admit entry of additional persons, places, or things attaining the requisite characteristics, but also to enable others to exit the statute's coverage when they no longer have those characteristics." *Republic Inv. Fund I v. Town of Surprise*, 166 Ariz. 143, 149–50, 800 P.2d 1251, 1257–58 (1990). The restaurant smoking ordinance satisfies each requirement.

¶ 23 First, as noted above, the ordinance bears a rational relationship to a legitimate legislative purpose: preservation of the citizenry's health, comfort, safety, and welfare. Second, the ordinance applies "uniformly to all cases and to all members within the circumstances provided for by the law," that is, to all restaurants within the city. *Id.* at 150, 800 P.2d at 1258 (statute conferring rights and privileges or imposing restrictions on persons, places or things as a class is general law, while statute relating to particular persons, places or things of a class is special or local law; to be general, law need not operate on every person, place, or thing within the state). Third, the ordinance is elastic because it permits restaurants to enter or exit its coverage depending on whether they have or no longer have certain specified characteristics. All restaurants in Tucson must comply with the ordinance's requirements, which apply to new restaurants as well as existing facilities. And, the ordinance permits an "exit" from its coverage when, for example, a restaurant creates a satisfactory "designated smoking area" as defined in the ordinance. Code § 11–19(A)(1), (3), (B)(1), (C). In sum, the ordinance does not consti-

---

6. Grezaffi's reliance on Code § 11–89, which the City enacted more than ten years before § 11–19, is misplaced. Section 11–89 prohibits smoking in specified places, such as the workplace, malls, stores, and theaters, but does not apply, inter alia, to "bars, bowling alleys, pool halls, [and] restaurants." Code § 11–89(2)(d). Those exemptions, however, apply only to chapter 11, article III of the Code, and § 11–19 is part of article I of that chapter. That the City chose to exempt restaurants from the smoking prohibi-

tions in § 11–89 did not preclude it from subsequently enacting smoking regulations specifically relating to restaurants. Moreover, as a more recent, specific ordinance that particularly regulates smoking in restaurants, § 11–19 is controlling. *See Lavidas v. Smith*, 195 Ariz. 250, ¶ 13, 987 P.2d 212, ¶ 13 (App.1999), *quoting Lemons v. Superior Court*, 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984) ("Generally, a 'more recent, specific statute governs over [an] older, more general statute.' ") (brackets in *Lavidas* ).

tute the type of special legislation that Arizona's Constitution prohibits.

¶ 24 Citing *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), Grezaffi also contends the ordinance is nothing more than a "'veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations.'" *Id.* at 390, 114 S.Ct. at 2319, 129 L.Ed.2d at 319, *quoting Pioneer Trust & Savs. Bank v. Village of Mount Prospect*, 22 Ill.2d 375, 176 N.E.2d 799, 802 (1961). A land use regulation effects an unconstitutional taking under the Fifth Amendment only if it "does not substantially advance legitimate state interests or denies an owner economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 112 (1980) (citations omitted). *See also Dolan*, 512 U.S. at 385, 114 S.Ct. at 2316, 129 L.Ed.2d at 316. Grezaffi has made no such showing here, even assuming the ordinance somehow constitutes a land use regulation rather than a health provision that merely regulates conduct.

¶ 25 The ordinance substantially advances the legitimate health-related interests discussed above. "Legislation designed to promote the public welfare ... often places burdens on some persons more than others." *Ranch 57 v. City of Yuma*, 152 Ariz. 218, 225, 731 P.2d 113, 120 (App.1986). But "the deprivation of the most beneficial use of property and diminution in value are not sufficient in and of themselves to constitute a taking." *Id.*

¶ 26 Although her "takings" argument apparently goes beyond the facial validity of the smoking ordinance, Grezaffi did not establish that the ordinance deprived her of "any reasonable use for which [her] property is 'adapted and thus destroys its economic value, or all but a bare residue of its value.'" *Id.* at 226, 731 P.2d at 121, *quoting Fred F. French Investing Co. v. City of New York*, 39 N.Y.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381, 387 (1976). Nor did Grezaffi show that the ordinance caused any loss in business or revenue, which, in any event, does not necessarily constitute a "taking." *See Laidlaw Waste Systems, Inc. v. City of Phoenix*, 168

Ariz. 563, 815 P.2d 932 (App.1991). Grezaffi's argument also overlooks the fact that the ordinance does not equate to "a city's *adjudicative* decision to impose a condition tailored to the particular circumstances of an individual case." *Home Builders Ass'n of Central Arizona v. City of Scottsdale*, 187 Ariz. 479, 486, 930 P.2d 993, 1000 (1997). Finally, Grezaffi could have complied with the ordinance by making any necessary renovations to create a "designated smoking area," within or outside her restaurant, as specified in the ordinance. *See Third & Catalina Assocs. v. City of Phoenix*, 182 Ariz. 203, 208, 895 P.2d 115, 120 (App.1994) (no taking results when compliance with ordinance "merely requires the expenditure of money"). In sum, enforcement of the ordinance against Grezaffi does not constitute an unconstitutional taking.

### DISPOSITION

¶ 27 All of Grezaffi's constitutional challenges to the City's restaurant smoking ordinance are without merit. Code § 11–19 is facially valid. Accordingly, the superior court's order denying Grezaffi's appeal is affirmed.

BRAMMER, Jr., Presiding Judge and FLÓREZ, Judge, concurring.