OPINION
 

 ANN CRAWFORD McCLURE, Justice.
 

 Phyllis Woodall appeals from an order denying habeas corpus relief. At issue is the facial constitutionality of the municipal anti-smoking ordinance. We affirm.
 

 FACTUAL SUMMARY
 

 In 2001, the City of El Paso adopted an ordinance which prohibits smoking in all enclosed public places within the city, including food establishments, nightclubs, and bars. El Paso, Tex, Code § 9.50.030(7)(2001). It is unlawful for any person to smoke in any area where smoking is prohibited. El Paso, Tex, Code § 9.50.130(B)(2001). It is also unlawful for any person who owns, manages, operates or otherwise controls the use of any premises subject to regulation under this chapter to fail to comply with all of its provisions. El Paso, Tex, Code § 9.50.130(A)(2001). A person who is found guilty of violating the anti-smoking ordinance is subject to the following punishment:
 

 1. A fine not exceeding one hundred dollars for the first violation;
 

 2. A fine not exceeding two hundred dollars for a second violation within a one year period of the first violation;
 

 3. A fine not exceeding five hundred dollars for an additional violation within a one year period of the first violation.
 

 El Paso, Tex, Code § 9.50.130(C)(l)-(3) (2001).
 

 
 *686
 
 The City of El Paso enacted the ordinance for three stated purposes: (1) to improve and protect public health by eliminating smoking in public places and places of employment; (2) to guarantee the right of nonsmokers to breathe smoke-free air; and, (3) to recognize that the need to breathe smoke-free air shall have priority over the choice to smoke. El Paso, Tex., Code § 9.50.010 (2001).
 

 Woodall is part-owner of the Naked Harem Nightclub in El Paso and the land on which it is located. Prior to adoption of the City’s anti-smoking ordinance, Woodall had permitted both employees and patrons to smoke in the restrooms
 
 [1]
 
 of the nightclub. On January 21, 2003, Woodall was smoking in the club when Officer Lance Lanahan of the El Paso Police Department approached and asked her to extinguish the cigarette. When Woodall refused, La-nahan issued her a citation for violating the ordinance by smoking in an enclosed public place.
 
 [2]
 
 Lanahan did not observe anyone else smoking a cigarette in the nightclub. Woodall signed a promise to appear before a municipal court judge.
 

 Woodall subsequently filed an application for writ of habeas corpus in district court challenging the constitutionality of the anti-smoking ordinance. The district court issued the writ, but after conducting a hearing on the merits of Woodall’s arguments, denied the requested relief.
 

 HABEAS CORPUS
 

 The writ of habeas corpus is an extraordinary writ.
 
 Ex parte Weise,
 
 55 S.W.3d 617, 619 (Tex.Crim.App.2001). Neither a trial court nor an appellate court should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal.
 
 Id.
 
 Additionally, an applicant must be illegally restrained to be entitled to relief.
 
 Id.; Gibson v. State,
 
 921 S.W.2d 747, 753 (Tex.App.-El Paso 1996, writ denied). Woodall’s liberty is restrained by virtue of the citation issued by Officer Lanahan for violation of the anti-smoking ordinance and her promise to appear in municipal court made in connection with that citation. We now consider whether the issues raised by Woodall in her habeas application are cognizable in a pretrial writ application.
 

 Ex Post Facto and Retroactive Law Challenges
 

 In Issues One, Three, and Five, Woodall argues that the anti-smoking ordinance is unconstitutional because it is an
 
 ex post facto
 
 or retroactive law. These arguments center around Woodall’s contentions that she has for many years allowed smoking in her nightclub and any present restriction is an
 
 ex post facto
 
 or retroactive law because it restricts her use of her private property.
 

 
 *687
 
 This is plainly an “as applied” challenge to the constitutionality of the anti-smoking ordinance. It is well established that a pretrial writ of habeas corpus may not be used to address an “as applied” challenge because it is not ripe for review.
 
 See Ex parte Weise,
 
 55 S.W.3d at 620-21;
 
 Ex parte Cross,
 
 69 S.W.3d 810, 815 (Tex.App.-El Paso 2002, no pet.). Instead, this type of challenge must be litigated in the trial court and adjudicated on direct appeal.
 
 See Cross,
 
 69 S.W.3d at 815. Issues One, Three, and Five are dismissed for lack of subject matter jurisdiction.
 

 Inverse Condemnation
 

 In Issue Two, Woodall maintains that the anti-smoking ordinance violates Article 1, section 17 of the Texas Constitution
 
 [3]
 
 because it is an inverse condemnation of a vested property right. The elements of a takings claim under Article 1, section 17 are that: (1) the governmental unit intentionally performed certain acts, (2) the acts resulted in a taking, damaging, or destruction of the property; and (3) the taking was for public use.
 
 Loyd v. ECO Resources, Inc.,
 
 956 S.W.2d 110, 128 (Tex.App.-Houston [14th Dist.] 1997, no pet.);
 
 see General Services Commission v. Little-Tex Insulation Co., Inc.,
 
 39 S.W.3d 591, 598 (Tex.2001)(to establish takings claim, plaintiff must prove that the state intentionally performed certain acts that resulted in “taking” of property for public use). Woodall provides no argument or authority suggesting that this issue, which necessarily involves a civil claim for damages to the owner’s private real property, is cognizable in the context of a criminal habeas corpus proceeding. Issue Two is dismissed for lack of subject matter jurisdiction.
 

 Exercise of Police Power
 

 Finally, in Issue Four, Woodall argues that the anti-smoking ordinance is not a valid exercise of police power because it is arbitrary and unreasonable. Woodall also challenges the process by which the governing body enacted the ordinance because it allegedly failed to consider alternative measures. Because some aspects of Woo-dall’s argument can be construed as a challenge to the facial validity of the ordinance, we will address the merits.
 
 [4]
 

 A city ordinance is presumed to be valid.
 
 City of Brookside Village v. Comeau,
 
 633 S.W.2d 790, 792 (Tex.1982). The party attacking the ordinance bears an “extraordinary burden” to show “that no conclusive or even controversial or issuable fact or condition existed” which would authorize the municipality’s passage of the ordinance.
 
 Id.
 
 at 792-93. If reasonable minds may differ as to whether a particular ordinance has a substantial relationship to the public health, safety, morals, or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the City’s
 
 *688
 
 police power.
 
 See Quick v. City of Austin,
 
 7 S.W.3d 109, 117 (Tex.1998). If the evidence reveals an issuable fact in this respect, the ordinance must stand.
 
 Id.
 

 Woodall asserts that the ordinance is arbitrary and unreasonable because it imposes the views of non-smokers on the “freedom” of smokers to smoke in restaurants, bars, grocery stores, and other privately-owned businesses. However, a city may enact reasonable regulations to promote the health, safety, and general welfare of its people as a valid exercise of its police power.
 
 City of College Station v. Turtle Rock Corporation,
 
 680 S.W.2d 802, 805 (Tex.1984). The regulation of smoking is a valid use of a state or municipality’s police power.
 
 See Fagan v. Axelrod,
 
 146 Misc.2d 286, 297, 550 N.Y.S.2d 552, 559 (N.Y.1990)(analyzing constitutionality of state law which restricted tobacco smoking in indoor areas open to the public). Woo-dall does not dispute that the smoking restrictions, which are limited to enclosed public places, bears a substantial relationship to the public health, safety, and general welfare. While no Texas appellate court has addressed this issue, courts in other states have concluded that similar ordinances are a rational, legitimate means of protecting the general health, safety, and welfare of the community.
 
 See e.g., Foundation for Independent Living, Inc. v. Cabell-Huntington Board of Health,
 
 214 W.Va. 818, 591 S.E.2d 744, 759-60 (2003)(clean indoor air regulations that restricted smoking in enclosed public places were, despite the exceptions, reasonable in relation to the public policy goal of a society free from tobacco use and were not arbitrary or unreasonable in their application);
 
 City of Tucson v. Grezaffi,
 
 200 Ariz. 130, 137, 23 P.3d 675, 682 (Ariz.Ct.App.2001)(city ordinance that promoted public welfare by prohibiting smoking in restaurants was a rational, legitimate means of safeguarding the general health, safety, and welfare of the community).
 
 See also Fagan,
 
 550 N.Y.S.2d at 559-60 (upholding clean indoor air act against multiple challenges to its constitutionality, and holding that the act represented accommodation between desire to limit exposure of nonsmokers to smoke and relevant economic and social considerations; “classification” into smokers and non-smokers was rationally related to legislative objective and did not create or apply to a suspect class or affect a fundamental right).
 

 Woodall further argues that other more reasonable measures, such as requiring property owners to install special ventilation systems or to partition smoking areas from non-smoking areas, could be used to protect people from the dangers of secondhand smoke, yet still accommodate those who wish to smoke in enclosed public places. In an effort to show what alternative measures should have been considered, Woodall has asked this Court to take judicial notice of the anti-smoking ordinance enacted by the City of Austin. Among other things, the Austin ordinance allows business owners to obtain unrestricted and restricted smoking permits; it allows smoking in certain facilities if an enclosed non-smoking area is provided and the smoking area is mechanically ventilated to prevent smoke from entering a nonsmoking area, and no one under the age of 18 is admitted to the smoking area. Woo-dall did not offer any evidence showing what alternative measures were or were not considered by the governing body of the City of El Paso nor did she establish that the alternative measures she promotes are more reasonable or viable than the one chosen by the City.. For all we know, the City may well have rejected similar measures based upon evidence presented to the governing body. We will not conclude that the City of El Paso abused its discretion simply because another municipality enacted a different ordinance. If nothing else, a comparison of the El Paso
 
 *689
 
 and Austin ordinances demonstrates that reasonable minds may differ as to how best to protect the public from the dangers of second-hand smoke. In the absence of any evidence demonstrating an abuse of discretion, we conclude that the anti-smoking ordinance is a valid exercise of the City’s police power.
 
 See Quick,
 
 7 S.W.3d at 117. Issue Four is overruled. We affirm the order of the trial court denying habeas corpus relief.
 

 [1]
 

 . In her brief, Woodall asserts that the court reporter erroneously transcribed this portion of her testimony. According to Woodall, she actually testified that patrons and employees had been permitted to smoke in the business establishment, not just the restrooms. Woo-dall has not filed a motion to correct an inaccuracy in the reporter’s record pursuant to Tex.R.App. P. 34.6(e). Consequently, we will recite the evidence as stated in the reporter's record.
 

 [2]
 

 . The citation, which is sworn to by Lanahan, charges Woodall with violation of the anti-smoking ordinance. In the space designated on the citation for "Offense # 1,” Lanahan wrote "Smoking Ord. Violation” and in the space designated for "Officer Notes,” he wrote, “Refused to put out cigarette.” The citation reflects that the offense occurred at the Naked Harem. Thus, the citation charges Woodall with violating the ordinance by smoking in an enclosed public place in violation of Section 9.50.130(B). Until Woodall enters a "not guilty” plea, the citation serves as the complaint charging her with violation of the ordinance.
 
 See Tex.Code
 
 Crim. Proc. Ann. art. 45.018 (Vernon Pamph.2004-05);
 
 State v. Shaw,
 
 822 S.W.2d 807, 809 (Tex.App.Austin 1992, no pet.).
 

 [3]
 

 . Article I, section 17, of the Texas Constitution provides: No person’s property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person. Tex. Const, art. 1, § 17.
 

 [4]
 

 . During the course of this proceeding, the State has argued that Woodall lacks standing to challenge the constitutionality of that portion of the anti-smoking ordinance which allows a business owner to be prosecuted for failing to comply with the requirements of the ordinance. The State has taken the stance that Woodall is not being prosecuted as an owner who permitted another person to smoke in an enclosed public place, but rather as an individual who personally violated the ordinance by smoking in a prohibited place. Regardless of which section of the ordinance Woodall is alleged to have violated, Issue Four is addressed to the validity of the entire ordinance. Accordingly, we conclude that Woodall has standing to raise this issue on appeal.