*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

D.A.B.E., INC., d/b/a ARNIE'S SALOON, et al.,
                                   *Plaintiffs-Appellants,*

        *v.*                                              No. 03-4662

CITY OF TOLEDO,

                                   *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-07637—James G. Carr, District Judge.

Argued: September 22, 2004

Decided and Filed: January 6, 2005

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** Richard M. Kerger, KERGER & KERGER, Toledo, Ohio, for Appellants. Keith A. Wilkowski, VASSAR, DILLS & DAWSON, Toledo, Ohio, for Appellee. **ON BRIEF:** Richard M. Kerger, Kimberly A. Donovan, KERGER & KERGER, Toledo, Ohio, for Appellants. Keith A. Wilkowski, VASSAR, DILLS & DAWSON, Toledo, Ohio, for Appellee.

———————————

### OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. Appellants are a group of proprietors of bars, restaurants and bowling alleys, as well as an association of restaurant owners, all of whom operate within the City of Toledo, Ohio. Collectively, they comprise an organization called "D.A.B.E., Inc.," which filed suit against the City seeking a declaration that the City's amended "Clean Indoor Air Ordinance" is void and unenforceable, as well as a preliminary and permanent injunction prohibiting the City from enforcing the ordinance. Appellants appeal the district court's denial of their claims for relief. For the reasons that follow, we AFFIRM.

### I.

The City of Toledo has regulated smoking in public places since 1987, when it enacted the original Clean Indoor Air Ordinance. In early 2003, the City Council formed a task force to consider strengthening the ordinance in order to protect employees and non-smoking patrons from the harmful effects of

1

secondhand smoke. After holding numerous meetings and public hearings, the City Council unanimously repealed the 1987 Clean Indoor Air Ordinance and enacted a new Clean Indoor Air Ordinance, No. 509-03.

Ordinance No. 509-03 regulates the ability to smoke in public places, such as retail stores, theaters, courtrooms, libraries, museums, health care facilities, and—most relevant to the instant case—restaurants and bars. In enclosed public places, smoking is generally prohibited except in a "separate smoking lounge" that is designated for the exclusive purpose of smoking and that satisfies the following criteria:

(1)     it cannot constitute more than thirty percent of the total square footage of space to which the public is invited;

(2)     it must be completely enclosed on all sides by floor-to-ceiling walls;

(3)     it must have a separate ventilation system not used by the non-smoking portion of the establishment;

(4)     it must not incorporate the sole path to or from the restrooms, to or from the non-smoking portion of the establishment, or into or out of the building or waiting areas; and

(5)     it cannot be located in an area where employees are required to work.

The ordinance provides for a 120-day exemption within which an establishment may construct a smoking lounge meeting these requirements.

Various interested parties attempted to seek repeal of the amended ordinance by referendum, but the referendum failed for lack of the requisite number of valid signatures. Appellants then filed suit against the City of Toledo seeking declaratory and injunctive relief. They challenged the ordinance on two grounds: first, that it constitutes a regulatory taking of their property in violation of the Fifth and Fourteenth Amendments; and second, that it is preempted by section 3791.031 of the Ohio Revised Code, a state law that regulates smoking in places of public assembly but that does not apply to restaurants, bowling alleys and bars.

On November 13, 2003, the district court held a hearing on appellants' requests for relief. During the following weeks, the district court entered a series of orders denying relief on all claims and, ultimately, dismissing appellants' complaint. In so doing, the district court held that the ordinance did not effect a regulatory taking and that it did not conflict with—and, therefore, was not preempted by—section 3791.031 of the Ohio Revised Code. This timely appeal followed.

## II.

We review for abuse of discretion the district court's denial of appellants' request for injunctive relief; within this standard, the district court's legal conclusions are reviewed de novo and its factual findings are upheld unless clearly erroneous. *Sec'y of Labor, U.S. Dep't of Labor v. 3re.com, Inc.*, 317 F.3d 534, 537 (6th Cir. 2003); *S.W. Williamson County Cmty. Ass'n v. Slater*, 243 F.3d 270, 277 (6th Cir. 2001). With regard to appellants' request for a declaration that the Clean Indoor Air Ordinance is "void and unenforceable," the district court's legal conclusions are subject to de novo review. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 916 (6th Cir. 2002).

### A. *Regulatory Taking Claim*

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. "The Supreme Court has recognized two categories of takings: regulatory and

physical." *Waste Mgmt., Inc. v. Metro. Gov't of Nashville*, 130 F.3d 731, 737 (6th Cir. 1997) (citations omitted). Appellants allege the former. Furthermore, their attack on the ordinance is limited to a facial challenge, which requires them to prove that the "mere enactment" of the ordinance constitutes a taking of their property. *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 295 (1981) (citing *Agins v. Tiburon*, 447 U.S. 255, 260 (1980)). According to the Supreme Court, the test to be applied in considering facial challenges such as this one is "fairly straightforward." *Hodel*, 452 U.S. at 295. Under that test, "[a] statute regulating the uses that can be made of property effects a taking if it denies an owner economically viable use of his land[]." *Id.* at 295-96 (citations and internal quotation marks omitted); *accord Agins*, 447 U.S. at 260-63; *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 501-02, 502 n.29 (1987). Sustaining such a facial challenge is a "heavy burden." *Keystone Bituminous Coal Ass'n*, 480 U.S. at 501.

The evidence presented in this case fails to establish that, on its face, the Clean Indoor Air Ordinance denies appellants "economically viable use" of their respective properties. Appellants have submitted affidavits alleging that they have lost—or fear they will lose—customers as a result of the ordinance, because smoking is an activity in which many customers wish to engage while patronizing their establishments. Even if true, however, those allegations are simply not enough to satisfy appellants' burden of proof.

In *Hodel*, the Supreme Court held that the Surface Mining Control and Reclamation Act did not, on its face, effect a regulatory taking because of three features of the Act: first, it did not, "on its face, prevent beneficial use of coal-bearing lands;" second, it did not "categorically prohibit surface coal mining" but "merely regulate[d] the conditions under which such operations may be conducted;" and third, it did not "purport to regulate alternative uses to which coal-bearing lands may be put." *Hodel*, 452 U.S. at 296. The same factors that compelled the Court's conclusion in *Hodel* apply in this case. First, there is nothing on the face of the Clean Indoor Air Ordinance that prevents the "beneficial use" of appellants' property. To the contrary, the ordinance has absolutely no effect on any aspect of appellants' businesses other than to restrict the areas in which appellants' patrons may smoke.[1] Second, the ordinance does not "categorically prohibit" smoking inside appellants' establishments; it "merely regulates the conditions under which" smoking is permitted. We recognize that the construction of separate smoking lounges in most cases will require some financial investment, but an ordinance does not effect a taking merely because compliance with it "requires the expenditure of money." *Third & Catalina Assocs. v. City of Phoenix*, 895 P.2d 115, 120 (Ariz. Ct. App. 1994). Finally, for obvious reasons, the ordinance does not "purport to regulate alternative uses" of appellants' respective properties. Therefore, pursuant to *Hodel*, it is clear that appellants have failed to establish that the Clean Indoor Air Ordinance, on its face, effects a regulatory taking of their property.

## B. Preemption Claim

Appellants' second argument is that the Clean Indoor Air Ordinance conflicts with—and, therefore, is preempted by—section 3791.031(A) of the Ohio Revised Code.

---

[1] Even if the ordinance "prevent[ed] the most profitable use of [appellants'] property," that would not be enough to establish a taking. *Andrus v. Allard*, 444 U.S. 51, 66 (1979); *see also id.* at 65-66 (holding that "the interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests" and that lost profits "– unaccompanied by any physical property restriction – provides a slender reed upon which to rest a takings claim") (citation omitted); *City of Tucson v. Grezaffi*, 23 P.3d 675, 684 (Ariz. Ct. App. 2001) (holding that "[l]egislation designed to promote the public welfare . . . often places burdens on some persons more than others[,] [b]ut the deprivation of the most beneficial use of property and diminution in value are not sufficient in and of themselves to constitute a taking") (citations and quotation marks omitted). The Supreme Court has consistently "affirmed that 'where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking.'" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 327 (2002) (quoting *Andrus*, 444 U.S. at 65-66).

> A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of police power, rather than of local self-government, and (3) the statute is a general law.

*City of Canton v. State*, 766 N.E.2d 963, 966 (Ohio 2002) (citations omitted). The City concedes that the ordinance is an exercise of police power and that section 3791.031 of the Ohio Revised Code is a general law. Thus, the only issue is whether the ordinance "is in conflict with the statute." *Id.*

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids or prohibits, and vice versa." *Middleburg Heights v. Ohio Bd. of Bldg. Stds*. 605 N.E.2d 66, 68 (Ohio 1992). To the extent that the statute does not address or apply to an item or issue, however, an ordinance regulating the excluded item or issue does not conflict with the statute, even if it deals with the same general subject matter. *See Mr. Fireworks, Inc. v. City of Dayton*, 548 N.E.2d 984, 986-87 (Ohio Ct. App. 1988). "The law in Ohio on 'conflict' is stringent. Pre-emption is not easily demonstrated." *City of East Cleveland v. Scales*, 460 N.E.2d 1126, 1128 (Ohio Ct. App. 1983).

In this case, section 3791.031 of the Ohio Revised Code regulates indoor smoking throughout the State of Ohio within "places of public assembly." It explicitly provides, however, that "[r]estaurants, food service establishments, dining rooms, cafes, cafeterias, or other rooms used primarily for the service of food, as well as bowling alleys and places licensed by the division of liquor control to sell intoxicating beverages for consumption on the premises, are not places of public assembly." O.R.C. § 3791.031(A)(3). As discussed, the City of Toledo's Clean Indoor Air Ordinance prohibits smoking in all public places, including restaurants and bars, except in separate smoking lounges.

Appellants argue that because smoking is allowed in their establishments under state law but not under the ordinance, there is a conflict that renders the ordinance preempted by state law. The City argues, by contrast, that the statute "simply does not regulate the establishments" that are subject to the ordinance and, therefore, municipalities within the State of Ohio are free to regulate smoking within these establishments in the exercise of their "home rule" authority. *See* Ohio Const. art. XVIII, § 3 ("Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.").

The opinion of the Ohio Court of Appeals in *Mr. Fireworks* is particularly instructive. In that case, the court held that there was no conflict between a municipal ordinance that prohibited the sale of sparklers and novelty noisemakers and a state statute that regulated fireworks but that explicitly provided that "[t]his chapter does not prohibit or apply to" sparklers and novelty noisemakers. *Mr. Fireworks*, 548 N.E.2d at 985-86. The court reasoned that the legislature's use of the phrase "does not prohibit or apply to" indicated not that sparklers and novelty noisemakers were immune to regulation, but that these particular items simply were not addressed in, or covered by, the statute. *Id.* at 986. The same rationale applies here; by stating that certain types of establishments—such as restaurants, bars, bowling alleys, etc.—"are not places of public assembly," O.R.C. § 3791.031(A)(3), the legislature indicated not that these establishments were immune to smoking-related regulation, but that they simply did not fall within the ambit of the statute.

Our independent research reveals that other courts that have considered whether smoking-related ordinances are preempted by state law have reached similar conclusions. For example, in *Oregon Restaurant Association v. City of Corvallis*, 999 P.2d 518, 519 (Or. App. 2000), the Court of Appeals of Oregon held that no conflict existed between a state statute prohibiting smoking in public places except in approved smoking areas and a City ordinance prohibiting smoking "in all enclosed public places within the City or located on City owned property, including but not limited to" restaurants. According to the court:

> The Act prohibits smoking in certain locations; it does not contain the slightest hint that the legislature intended to create a positive right to smoke in all public places where it did not expressly forbid smoking. Nothing in the Act is inconsistent with a local jurisdiction's decision to impose greater limits on public smoking.

*Id.* at 520. Although the state statute did not explicitly provide that its restrictions were "basic" or "minim[al]," the court held that "we are reluctant to assume that the legislature, in adopting statewide standards, intended to prohibit a locality from requiring more stringent limitations within its particular jurisdiction." *Id.* at 521. In the court's view, it is "reasonable to assume that the legislature did not, by adopting a statewide law, mean to displace local regulation of local conditions unless its intention to do so was apparent." *Id.* at 520.

Similarly, in *Amico's Inc. v. Mattos*, 789 A.2d 899, 907 (R.I. 2002), the Supreme Court of Rhode Island held that a state statute requiring that "eating facilities with a seating capacity of fifty (50) or more persons . . . have separate seating for nonsmokers and smokers" did not conflict with a local ordinance requiring "restaurants of any size either [to] be smoke-free or [to] provide a smoking area enclosed by solid walls, doors with automatic closing mechanisms, exhaust fans, and negative air pressure." The court reasoned that no restaurant or bar would violate the statute by complying with the ordinance and that, in fact, "the more stringent smoking regulations imposed by the town advance the [statute's] stated purposes . . . ." *Id.; see also City of Tucson v. Grezaffi*, 23 P.3d 675, 680-81 (Ariz. Ct. App. 2001) (holding that a local ordinance restricting smoking was not preempted by a state statute); *Tri-Nel Mgmt., Inc. v. Bd. of Health*, 741 N.E.2d 37, 44 (Mass. 2001) (same).

In an attempt to overcome this persuasive authority supporting the City's position, appellants point to the case of *LDM, Inc. v. Princeton Regional Health Commission*, 764 A.2d 507, 517 (N.J. Super. Ct. 2000), in which a New Jersey trial court held that a local ordinance prohibiting smoking in "restaurants, bars, cabarets, and taverns" in an attempt to protect the public from the deleterious effects of smoking was preempted by a state law that did not prohibit smoking in restaurants, but merely "encourage[d] restaurants to establish non-smoking areas." That case, however, is significantly distinguishable from the present one. The statute at issue in *LDM* provided that any guidelines suggested by political subdivisions such as municipalities would "in no case . . . be mandatory." *Id.* (quoting N.J. STAT. ANN. 26:3E-10(a)). The court also found it significant that the statute explicitly stated that its provisions "shall supersede" any municipal ordinance concerning smoking in restaurants except ordinances that are enacted "for purposes of protecting life and property from fire." *Id.* (quoting N.J. STAT. ANN. 26:3E-10(b)). This led the court to conclude that the statute "precludes a municipality from banning smoking in restaurants based on the alleged deleterious effects of smoking on the public health" because "[t]he authority of the municipality to restrict smoking in restaurants is limited to protecting life and property from fire." *Id.* at 518. Because none of the factors that compelled the *LDM* court's decision is present here, that case fails to undermine our conclusion that section 3791.031(A)(3) of the Ohio Revised Code does not preempt the City of Toledo's Clean Indoor Air Ordinance.

## III.

For these reasons, the district court's judgment is AFFIRMED.