**TRADITIONS TAVERN et al., Appellants,**

v.

**CITY OF COLUMBUS, Appellee.**

[Cite as *Traditions Tavern v. Columbus*, 171 Ohio App.3d 383, 2006-Ohio-6655.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–367.

Decided Dec. 14, 2006.

386

Phillip L. Harmon, for appellants.

Richard C. Pfeiffer Jr., City Attorney, Jennifer S. Gams, Joshua T. Cox, and Daniel W. Drake, for appellee.

TRAVIS, Judge.

{¶ 1} Appellants, four central Ohio bars and the establishments' proprietors,[1] appeal from the March 23, 2006 judgment of the Franklin County Municipal Court, Environmental Division, granting summary judgment in favor of appellee, the city of Columbus.

---

1. SFKD, Inc., d.b.a. Traditions Tavern, Dimo Kuzmanovski, proprietor; Sunrise 967, Inc., d.b.a. Sunset Lounge, Eugene Hawkins, proprietor; Hazel & Sue, Inc., d.b.a. GJ's Lounge, Beverly Bowles, proprietor; and AD 1400, Inc., d.b.a. Key Club, Albert Dowden, proprietor.

{¶ 2} This case represents a challenge to the constitutionality of the City of Columbus Smoke-free Indoor Air Act of 2004, ("Columbus smoking ban" or "the ban") enacted as Columbus City Code ("C.C.") 715 on July 2, 2004. In the November 2, 2004 general election, the Columbus smoking ban was subjected to a referendum vote seeking to overturn the ordinance's passage. Columbus voters rejected the referendum, and the ban went into effect on January 31, 2005.[2]

{¶ 3} The Columbus smoking ban regulates smoking in enclosed public areas and places of employment. C.C. 715.02(A) states:

> No proprietor of a public place or place of employment shall permit smoking in said public place or place of employment within the city of Columbus, except as provided in section 715.03 of this chapter.

A "public place" is "an enclosed area to which the public is invited or in which the public is permitted and includes service lines." C.C. 715.01(G). Private dwellings are not considered public places unless they are used in a public enterprise, such as a child-care or health-care facility. Id. "Place of employment" denotes "an enclosed area under the control of a public or private employer that employees normally frequent during the course of employment." C.C. 715.01(E). "Employer" is defined as "an individual person, business, partnership, association, corporation, including a municipal corporation, trust, or any non-profit entity that accepts the provision of services from one or more employees." C.C. 715.01(C). In turn, a "business" is a "sole proprietorship, partnership, association, joint venture, corporation, or * * * any other entity formed for profit-making purposes." C.C. 715.01(A).

{¶ 4} Pursuant to the above definitions, establishments such as restaurants, bars, and bowling alleys are subject to the ban's provisions. However, a "private club," as defined in R.C. 4301.01(B)(13), is exempt from the smoking prohibitions so long as no nonmembers are present and, if alcoholic beverages are being served, the club is a holder of a valid D–4 liquor license. C.C. 715.01(N) and 715.03(G).

{¶ 5} In addition to the general prohibitions, the ban establishes duties and punishments for employers and business proprietors.[3] For example, proprietors

---

2. Voters later defeated two other challenges to the Columbus smoking ban. On May 3, 2005, Columbus voters declined an initiative that would have exempted certain establishments from the ban's provisions. Additionally, on November 7, 2006, voters statewide rejected a proposed constitutional amendment that would have retroactively invalidated any ordinance, such as the Columbus smoking ban, that prohibited smoking in any establishment exempted by the proposed amendment.

3. The term "proprietor" is defined as "the owner, manager, operator, liquor permit holder, or other person in charge or control of a public place or place of employment." C.C. 715.01(F).

are required to place "no smoking" signs in affected public places and places of employment, and employers must adopt and prominently display written smoking policies. Enforcement of the ban is assigned to the Columbus Board of Health and its designees. C.C. 715.07. Penalties for violating the ban are set forth in C.C. 715.99. For a first-time offense, the board of health is instructed to issue a letter of warning to the offending proprietor. Id. After the initial warning, each violation constitutes a minor misdemeanor punishable by a maximum fine of $150. Id. The ban imposes strict liability for any violation of its terms. C.C. 715.99(C).

{¶ 6} On December 7, 2004, appellants commenced this action seeking a declaratory judgment pronouncing the ban unconstitutional and the issuance of an injunction prohibiting the city of Columbus from enforcing its provisions. Appellants' complaint alleged that the ban (1) unconstitutionally conflicts with state law, (2) is unconstitutionally vague, (3) violates appellants' due process rights, and (4) violates the Equal Protection Clauses, of the United States and Ohio Constitutions. Appellants later amended the complaint to include additional plaintiffs, and the city filed an amended answer.

{¶ 7} On January 10, 2005, the city filed a motion for summary judgment. The city's motion cited *D.A.B.E. v. Toledo* (N.D.Ohio 2003), 292 F.Supp.2d 968, affirmed (C.A.6, 2005), 393 F.3d 692—which upheld the constitutionality of a smoking ordinance in Toledo—as controlling authority in support of its position that the ban is constitutional and enforceable. Appellants filed a memorandum opposing summary judgment on January 21, 2005, disputing the precedential effect of *D.A.B.E.* and differentiating the Columbus smoking ban from the Toledo ordinance. The city filed a reply on January 25, 2005.

{¶ 8} On January 26, 2005, the trial court issued a decision granting the city's motion for summary judgment. The trial court relied on the *D.A.B.E.* decisions in rejecting appellants' claim that the ban conflicts with state law. The court found no merit to appellants' contention that the ban violated their substantive due process rights. Additionally, the trial court found that a plain reading of the ordinance provides an objective standard defining the proscribed conduct in ordinary language, thus defeating any claim of vagueness. Finally, the court concluded that appellants' equal protection claim failed. Accordingly, the court entered judgment in favor of the city, and appellants filed a timely notice of appeal.

{¶ 9} Appellants raise a single assignment of error for review:

The Franklin County Municipal Court, Environmental Division erred in granting the motion for summary judgment filed by defendant-appellee city of Columbus.

{¶ 10} Appellate review of a trial court's decision on summary judgment is de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. We must independently review the record to determine whether summary judgment was appropriate. *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Pursuant to Civ.R. 56, summary judgment is properly granted only when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 11} The party moving for summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding the essential elements of the claims presented. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Conclusory assertions that the nonmoving party cannot prove its case are not sufficient to discharge this initial burden. Id. at 293, 662 N.E.2d 264. Similarly, once the burden is satisfied, one cannot prevent summary judgment by merely restating unsubstantiated allegations contained within the original pleadings. Instead, the nonmoving party must demonstrate the continued existence of a genuine issue of material fact by directing the court's attention to relevant, affirmative evidence of the type listed in Civ.R. 56(C). Id., citing Civ.R. 56(E).

{¶ 12} Appellants' single assignment of error represents a challenge to all four of the issues underlying the trial court's decision. Thus, we must examine whether the Columbus smoking ban constitutes an unconstitutional conflict with state law, as well as whether it is unconstitutionally vague, in violation of due process rights or contrary to concepts of equal protection. We address each issue in turn.

{¶ 13} Appellants' primary argument is that the Columbus smoking ban conflicts with state law in violation of Section 3, Article XVIII, Ohio Constitution. Sometimes referred to as one of the municipal home-rule amendments, Section 3, Article XVIII grants municipalities the ability to exercise police powers to pass and enforce regulations governing aspects of law not already governed by state statutes. The provision states:

> Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.

If a municipal regulation is in conflict with general laws, it is preempted by the state laws and rendered without effect.

{¶ 14} A municipal ordinance is preempted when "(1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9. There is no dispute that the Columbus smoking ban is an exercise of police power. Thus, the pertinent question is whether the ban conflicts with a statute that in turn must be deemed a general law.

{¶ 15} Appellants contend that R.C. 3791.031 is a general law intended to regulate smoking in public places. Appellant characterizes the statute as a broad prohibition on smoking that "defines both the indoor places of public assembly where smoking is prohibited statewide, and the indoor places where smoking is expressly *not* prohibited statewide." (Emphasis sic.) There is no question that R.C. 3791.031 regulates indoor smoking in defined places of public assembly throughout Ohio. However, appellant's contention that the statute pointedly divides public places between those in which smoking is prohibited and those in which smoking is not prohibited is not supported by the statute's language.

{¶ 16} Originally enacted in 1976, R.C. 3791.031 instituted mandatory no-smoking areas within places of public assembly:

For the purpose of separating persons who smoke from persons who do not smoke for the comfort and health of persons not smoking, in every place of public assembly there shall be an area where smoking is not permitted, which shall be designated a no smoking area * * *. A no smoking area may include the entire place of public assembly.

R.C. 3791.031(B). The statute prohibits smoking only within those areas set aside as nonsmoking. "No person shall smoke in any area designated as a no smoking area in accordance with division (B) of this section." R.C. 3791.031(D). Furthermore, in defining a "place of public assembly" the legislature specifically omitted places such as bars, restaurants, and bowling alleys:

Restaurants, food service establishments, dining rooms, cafes, cafeterias, or other rooms used primarily for the service of food, as well as bowling alleys and places licensed by the division of liquor control to sell intoxicating beverages for consumption on the premises, are not places of public assembly.

R.C. 3791.031(A)(3). Thus, the provisions of the statute do not address or apply to those establishments.

{¶ 17} A statute that provides for the identification and enforcement of no-smoking areas within places of public assembly does not amount to a comprehensive law completely forbidding or permitting smoking inside enclosed public areas. At no point does R.C. 3791.031 provide that smoking must be permitted within places of public assembly. Nor does the statute completely prohibit

smoking within public places, although it does allow that the "no smoking area may include the entire place of public assembly." R.C. 3791.031(B). Moreover, the statute does not pertain to all enclosed public spaces. Instead, it applies only to those public places that fall within its definition of a "place of public assembly."[4] Conspicuously absent from that definition are the very type of establishments appellants represent. Other examples of enclosed public buildings that are not addressed by R.C. 3791.031 are retail stores, gas stations, and small private businesses. Thus, even if R.C. 3791.031 qualifies as a general law regulating indoor smoking, we could not find that the Columbus smoking ban is in conflict with the statute.

{¶ 18} Under Ohio law, the concept of what constitutes a conflict is strict. *E. Cleveland v. Scales* (1983), 10 Ohio App.3d 25, 26, 10 OBR 32, 460 N.E.2d 1126. There can be conflict only when "the ordinance permits or licenses that which the statute forbids or prohibits, and vice versa." *Middleburg Hts. v. Ohio Bd. of Bldg. Stds.* (1992), 65 Ohio St.3d 510, 512, 605 N.E.2d 66, citing *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus. Additionally, even if a statute and an ordinance cover the same general subject matter, where an ordinance regulates an issue not addressed by the statute, there is no conflict. *D.A.B.E.*, 393 F.3d at 696–697, citing *Mr. Fireworks, Inc. v. Dayton* (1988), 48 Ohio App.3d 161, 548 N.E.2d 984.

{¶ 19} In this case, the statute neither forbids nor permits smoking in the general scheme. Instead, it mandates the creation of no-smoking areas within certain public areas and forbids smoking only within those defined limits. Moreover, the statute does not address a wide category of public places, such as restaurants, bars, or bowling alleys. Contrary to appellants' assertions, there is

---

4. {¶ a} R.C. 3791.031(A) defines a "place of public assembly" as

{¶ b} (1) Enclosed theatres, except the lobby; opera houses; auditoriums; classrooms; elevators; rooms in which persons are confined as a matter of health care, including but not limited to a hospital room and a room in a residential care facility serving as the residence of a person living in such residential care facility;

{¶ c} (2) All buildings and other enclosed structures owned by the state, its agencies, or political subdivisions, including but not limited to hospitals and state institutions for the mentally retarded and the mentally ill; university and college buildings, except rooms within those buildings used primarily as the residences of students or other persons affiliated with the university or college; office buildings; libraries; museums; and vehicles used in public transportation. That portion of a building or other enclosed structure that is owned by the state, a state agency, or a political subdivision and that is used primarily as a food service establishment is not a place of public assembly.

{¶ d} (3) Each portion of a building or enclosed structure that is not included in division (A)(1) or (2) of this section is a place of public assembly if it has a seating capacity of fifty or more persons and is available to the public. Restaurants, food service establishments, dining rooms, cafes, cafeterias, or other rooms used primarily for the service of food, as well as bowling alleys and places licensed by the division of liquor control to sell intoxicating beverages for consumption on the premises, are not places of public assembly.

no reason to believe or declare that the omission of these establishments from the statute demonstrates the Ohio legislature's desire to prohibit regulation of smoking in them. We concur with the Sixth Circuit's conclusion in *D.A.B.E.*:

> [B]y stating that certain types of establishments—such as restaurants, bars, bowling alleys, etc.—"are not places of public assembly," O.R.C. § 3791.031(A)(3), the legislature indicated not that these establishments were immune to smoking-related regulation, but that they simply did not fall within· the ambit of the statute.

Id., 393 F.3d at 697.

{¶ 20} We find no conflict between R.C. 3791.031 and the Columbus smoking ban. While both regulate smoking in public places generally, each addresses the issue differently. The statute fails to address a wide array of enclosed public spaces, whereas the ordinance applies directly to those places. Even the proscribed conduct is different. The statute prohibits *the act of smoking* in designated no-smoking areas within places of public assembly. The Columbus ban, however, prohibits *the act of permitting a person to smoke* in a public place or place of employment. Accordingly, the city was entitled to exercise its powers of self-governance to pass its ban. There is no violation of Section 3, Article XVIII.

{¶ 21} Appellants also contend that the ban is void because it is unconstitutionally vague. We note that laws, including those enacted by a municipality, "are entitled to a strong presumption of constitutionality and that a party challenging the constitutionality of a law bears the burden of proving that the law is unconstitutional beyond a reasonable doubt." *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16. This court's power to invalidate an enactment as unconstitutionally vague must be exercised with great caution. Id.

{¶ 22} The prohibition against vague or indefinite laws is one of many constitutional guarantees stemming from the concept of due process. The United States Supreme Court set forth the standard to be followed in determining whether a statute is impermissibly vague in *United States v. Harriss* (1954), 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989. There, the court instructed: "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." Id. at 617, 74 S.Ct. 808, 98 L.Ed. 989.

{¶ 23} Appellants argue that the Columbus smoking ban is impermissibly vague because it lacks an objective standard clearly setting forth the proscribed conduct in ordinary language. Specifically, appellants state that there is no common understanding of what it means to "permit smoking." We disagree.

{¶ 24} The Columbus smoking ban is written in ordinary language and includes an extensive list of definitions. While the phrase "permit smoking" is not included in the definitions, an ordinary person is expected to understand and apply the common meaning of everyday terms used in legislation. The word "permit" is no exception. As this court noted in *Bexley v. Selcer* (1998), 129 Ohio App.3d 72, 77, 716 N.E.2d 1220:

> The word "permit" is defined as "to suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." Black's Law Dictionary (5 Ed.Rev.1979) 1026. Other Ohio courts have held that this definition "connotes some affirmative act or omission." *Akron v. Meissner* (1993), 92 Ohio App.3d 1, 4, 633 N.E.2d 1201, 1203.

Thus, the ban prohibits a proprietor to allow, consent, or expressly assent to smoking within his or her establishment. Likewise, a proprietor is forbidden to acquiesce in smoking by failing to take appropriate measures to prevent people from using tobacco on the premises, such as posting no-smoking signs or removing ashtrays. The Columbus smoking ban is not unconstitutionally vague, but clearly gives notice of the conduct it prohibits in ordinary language.

{¶ 25} Appellants additionally charge that the ban's imposition of strict liability is a violation of their substantive due process rights. "The essence of substantive due process is the protection from certain arbitrary, wrongful governmental actions irrespective of the fairness of the procedures used to implement them." *Kistler v. Conrad,* Franklin App. No. 04AP–1095, 2006-Ohio-3308, 2006 WL 1781457, ¶ 14. The fact that a law imposes strict liability does not by itself violate due process. *State v. Schlosser* (1997), 79 Ohio St.3d 329, 333, 681 N.E.2d 911. The inquiry is whether the ban is arbitrary and unreasonable.

{¶ 26} The Columbus smoking ban does not implicate any constitutionally protected rights. Accordingly, to determine that the ban comports with due process, we must find "a rational relationship between [it] and its purpose." *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 545, 706 N.E.2d 323. Likewise, an enactment is said to comport with due process under the Ohio Constitution " 'if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' " Id., quoting *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 110, 4 O.O.2d 113, 146 N.E.2d 854. Regardless of phrasing, the ban must bear a rational relationship to a legitimate governmental interest to pass constitutional standards.

{¶ 27} Contrary to appellants' position, the Columbus smoking ban easily satisfies this requirement. The city has a legitimate interest in protecting the general welfare of its citizens from health dangers posed by exposure to environmental tobacco smoke. Prohibiting smoking in enclosed public places

furthers that interest by eliminating the possibility of contact with secondhand smoke in enclosed public places. Moreover, it is completely reasonable to hold proprietors of public places and places of employment, rather than patrons, because the proprietors manage those spaces. The citizenry has no authority to control the actions of patrons inside such establishments; that is the task of proprietors. Appellants' due process claims are without merit.

{¶ 28} Appellants' final challenge to the ban is that it violates the Equal Protection Clauses of the United States and Ohio Constitutions. "The limitations placed upon governmental action by the federal and state Equal Protection Clauses are essentially the same." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 7. The guarantee is straightforward: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Section 1, Fourteenth Amendment, United States Constitution.

{¶ 29} The government is prohibited from making classifications that result in a person or class of persons being denied the same protection of law enjoyed by others in the same place and under like circumstances. *In re Cundiff* (Jan. 13, 2000), Franklin App. No. 99AP–364, 2000 WL 28845 However, not all statutory classifications are prohibited. Equal protection guarantees require "only that the distinctions that are made not be arbitrary or invidious." Id., citing *Avery v. Midland Cty., Texas* (1968), 390 U.S. 474, 484, 88 S.Ct. 1114, 20 L.Ed.2d 45. Courts must examine a challenged statute to ensure that any classification made falls within the bounds of equal protection.

{¶ 30} Appellants' equal protection argument stems from the ban's exclusion of private clubs from its regulations. In essence, appellants argue that the ban is discriminatory because employees of private clubs are not afforded the same protection from environmental smoke as employees of public clubs. Alternatively, appellants submit that the ban's application to public clubs but not private clubs demonstrates an equal protection violation. Both of appellants' arguments are flawed.

{¶ 31} Pursuant to C.C. 715.03(G), private clubs are exempt from the ban's provisions if there are no nonmembers present and, if alcoholic beverages are served, it holds a valid liquor license. If nonmembers are present at a private club, then the ban does apply, and smoking is prohibited within the club. Thus, if any employee is not a member of the private club, his or her presence alone ensures that the ban's prohibitions are in force. In this the ban affords employees of both types of institutions the same protection. "A law that operates identically on all people under like circumstances will not give rise to an equal protection violation." *Linger v. Andrews*, Franklin App. No. 02AP–39, 2002-

Ohio-4495, 2002 WL 2005702, ¶ 19, citing *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 289, 595 N.E.2d 862.

{¶ 32} Thus, the only distinction appellants can challenge is that between a private club and a public club. "A statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions if it bears a rational relationship to a legitimate governmental interest." *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. The Columbus smoking ban implicates neither a suspect class nor a fundamental right; therefore, we apply the rational-basis test.

{¶ 33} As previously mentioned, it is clear that the ban easily satisfies this test. The city has a legitimate governmental interest in protecting the health of its citizens. Prohibiting smoking in enclosed public places undeniably furthers that interest. Moreover, it is rational for the city to exempt certain nonpublic places from its regulations of enclosed public spaces and places of employment. Buildings such as private clubs, as well as the private residences, family-owned and family-operated business not open to the public, and homes that are also excluded from the ban's prohibitions, are more private than public. The government often relents in its role of policing the public's health and safety when private thresholds are crossed.

{¶ 34} The classification between public and private clubs is not arbitrary or invidious, but is a reasonable distinction made in the furtherance of promoting public health. Furthermore, because "the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *McCrone,* supra, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, at ¶ 8, citing *Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369. We find that the Columbus smoking ban presents no equal protection violation.

{¶ 35} Having addressed each of appellants' arguments, we find that the trial court appropriately granted summary judgment in favor of the city. No genuine issues of material fact exist regarding the constitutionality of the Columbus smoking ban. The city properly exercised its power of self-governance, and the resulting ordinance does not offend the Ohio or United States Constitutions. Accordingly, appellants' assignment of error is overruled, and we affirm the judgment of the Franklin County Municipal Court.

Judgment affirmed.

KLATT, P.J., and SADLER, J., concur.